[Cite as *State v. McGill*, 2020-Ohio-575.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                                    :

    Plaintiff-Appellee,               :

                                            No. 108469

    v.                                           :

JACQUEZ R. MCGILL,                           :

    Defendant-Appellant.            :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 20, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-18-631610-A and CR-18-632809-A

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Megan Helton, Assistant Prosecuting Attorney, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and Noelle A. Powell, Assistant Public Defender, *for appellant.*

RAYMOND C. HEADEN, J.:

{¶ 1} Defendant-appellant Jacquez R. McGill ("McGill") appeals his convictions for attempted murder and felonious assault following a guilty plea. For the reasons that follow, we affirm.

**Procedural and Substantive History**

{¶ 2} On August 17, 2018, McGill was indicted in Cuyahoga C.P. No. CR-18-631610-A on one count of attempted murder in violation of R.C. 2923.02 and 2903.02(A), one count of felonious assault in violation of R.C. 2903.11(A)(1), one count of felonious assault in violation of R.C. 2903.11(A)(2), one count of tampering with evidence in violation of R.C. 2921.12(A)(1), one count of having weapons while under disability in violation of R.C. 2923.13(A)(3), one count of having weapons while under disability in violation of R.C. 2923.13(A)(2), one count of improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B), and one count of carrying a concealed weapon in violation of R.C. 2923.12(A)(2). The attempted murder and felonious assault counts each carried one- and three-year firearm specifications, and the remaining counts each carried forfeiture specifications.

{¶ 3} These charges arose from an incident on July 6, 2018, in which McGill followed the victim into a convenient store, followed the victim out of the store and across the parking lot, and fired multiple shots aimed at the victim's head at point blank range. The victim ducked; one shot grazed the side of his head and another shot struck him in the ribs.

{¶ 4} On September 28, 2018, McGill was indicted in Cuyahoga C.P. No. CR-18-632809-A on two counts of felonious assault in violation of R.C. 2903.11(A)(2), one count of felonious assault in violation of R.C. 2903.11(A)(1), one count of having weapons while under disability in violation of

R.C. 2923.13(A)(3), and one count of having weapons while under disability in violation of R.C. 2923.13(A)(2). All of the counts carried forfeiture specifications, and the felonious assault counts each carried one-, three-, and five-year firearm specifications. These charges arose from an incident on July 28, 2018, in which McGill pulled up in a vehicle outside of a bar and opened fire on two men, striking one of the men in the leg.

{¶ 5} McGill initially entered a plea of not guilty to all charges. On March 18, 2019, following extensive plea negotiations with the state, McGill retracted his not guilty pleas. In CR-18-631610-A, McGill pleaded guilty to an amended count of attempted murder with a three-year firearm specification, an amended count of felonious assault, one count of tampering with evidence with forfeiture specifications, one count of having weapons while under disability with forfeiture specifications, and an amended count of carrying concealed weapons with forfeiture specifications. In CR-18-632809-A, McGill pleaded guilty to an amended count of felonious assault with a three-year firearm specification and forfeiture specifications, an amended count of felonious assault with forfeiture specifications, and one count of having weapons while under disability. The remaining counts and specifications in both cases were dismissed. The parties agreed to a sentencing range between 10 and 17 years in exchange for McGill's plea. The court acknowledged the agreed sentencing range and informed McGill that it would sentence him within that range. The court also informed McGill that, pursuant to his plea agreement, he would not be eligible for judicial release.

{¶ 6} On March 25, 2019, the court held a sentencing hearing. The court heard from a detective who investigated both cases, the prosecutor, defense counsel, and McGill. The court ultimately sentenced McGill to an aggregate term of 15 years in prison.

{¶ 7} McGill appeals, presenting two assignments of error for our review.

**Law and Analysis**

{¶ 8} In his first assignment of error, McGill argues that because he did not understand that he would forgo eligibility for judicial release pursuant to the terms of his plea agreement, his guilty plea was not knowingly, intelligently, and voluntarily entered and must be vacated. In his second assignment of error, McGill argues that his plea should be vacated because the trial court did not advise him of his right to testify at trial. Because both assignments of error concern the validity of McGill's guilty plea, we will address them together.

{¶ 9} The underlying purpose of Crim.R. 11(C) is to convey certain information to a defendant so that he or she can make a voluntary and intelligent decision regarding whether to plead guilty. *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981). "The standard for reviewing whether the trial court accepted a plea in compliance with Crim.R. 11(C) is a de novo standard of review." *State v. Cardwell*, 8th Dist. Cuyahoga No. 92796, 2009-Ohio-6827, ¶ 26, citing *State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977).

{¶ 10} In order to ensure that a defendant enters a plea knowingly, voluntarily, and intelligently, a trial court must engage in an oral dialogue with the

defendant in accordance with Crim.R. 11(C). *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). Crim.R. 11(C) outlines the trial court's duties in accepting guilty pleas:

> (2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

**{¶ 11}** Trial courts must strictly comply with the requirements related to the waiver of constitutional rights under Crim.R. 11(C)(2)(c) in conducting plea colloquies, and a trial court's failure to inform a defendant of any right in that subsection invalidates the plea. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 1. "Strict compliance does not require an exact recitation of the precise language of the rule, but instead focuses on whether the trial court

explained or referred to the right in a manner reasonably intelligent to that defendant." *State v. Schmick*, 8th Dist. Cuyahoga No. 95210, 2011-Ohio-2263, ¶ 8.

{¶ 12} After a thorough review of the plea hearing, we conclude that the trial court fully complied with Crim.R. 11 in ensuring that McGill's plea was knowing, intelligent, and voluntary.

{¶ 13} Here, the record indicates the court conducted a full Crim.R. 11 hearing before accepting McGill's plea. At the plea hearing, the court discussed the charges McGill faced and the effects of McGill's plea as it related to the charges. Additionally, the following discussion took place regarding flat time and judicial release:

> DEFENSE COUNSEL: * * * well, he wants to accept the plea, but he — I think he needs to understand that even without the plea that the State is offering that whatever time he would receive is flat time. And even though there's a range that the State is offering and the Court is accepting, that's still flat time too, it just depends on the number.
>
> THE COURT: Okay. So Mr. McGill, do you — do you know what your attorney means when he says flat time?
>
> MCGILL: Whatever number is picked, I guess.
>
> THE COURT: Yes. Like so there's no time off for good behavior, you don't get out early depending on your behavior at the institution. And then as a term of this plea deal there would be no judicial release. So that you couldn't petition the Court to ask for judicial release.
>
> MCGILL: So with that — you saying with this plea deal I won't be granted a judicial?
>
> THE COURT: It's an agreed sentence. Which means you would agree to the flat time, to the time, whatever prison sentence that I would impose between the range of 10 and 17 years. And by agreeing to that, you would agree to do any time that I sentence you within that range.

MCGILL: Yes, but I'm asking, Your Honor, is like after my mandatory time, would I be able — would I be granted a judicial, is what I'm asking?

THE COURT: Well, I would never — first of all, I would never promise that I would grant a judicial release, not from here. But it's my understanding that as terms of the plea that it would not be — he would not be eligible for judicial release; is that correct? I don't want to put words in the State of Ohio's mouth.

PROSECUTOR: Your Honor, that is correct.

THE COURT: Okay. So that is correct, Mr. McGill. You would do — if I sentence you to 10 years, you would serve 10 years. If I sentenced you to 12, you would do 12. And then anywhere between 10 and 17, you would serve that definite time, and that's what we mean by flat time. You would also get credit for the days you spent here already on this case, but that's what we mean by flat time. Do you understand that?

MCGILL: Yes, I understand, Your Honor. I just — I just thought that the only time that would be mandatory would be the mandatory time. I don't have an understanding of how the whole sentence is mandatory.

THE COURT: It becomes mandatory — it doesn't really become mandatory. The firearm specification is the mandatory portion of the time. And then under the statute a certain percentage of the first degree felony or the high level felony offenses become mandatory for purposes of judicial release. But because this case, if it resolves under a negotiated plea bargain, you would agree that you would serve a prison sentence ranging from 10 to 17 years, and whatever term that I sentence you on it is your agreement to serve that term. You get the benefit of all these other charges and firearm specifications being dismissed in exchange for a specific sentence. And that's what I would impose at the time of your sentencing. You kind of can't have it both ways.

{¶ 14} Following this explanation, the court asked McGill if he wished to accept the state's plea offer, and he indicated that he did. Subsequently, the court engaged McGill in a thorough Crim.R. 11 colloquy. McGill advised the court that he was not under the influence of any medication or drugs. The court then thoroughly

reviewed the constitutional rights that McGill was waiving and made sure that he understood that he was waiving those rights by pleading guilty. With respect to his right not to testify at trial specifically, the following exchange took place:

> THE COURT: Do you understand that you have the right not to testify at the time of your trial, and that no one can use that against you and that you're giving up that right?
>
> MCGILL: Yes, Your Honor.

McGill also confirmed that no threats or promises had been made to induce him to enter a guilty plea.

{¶ 15} The court again reviewed the nature of the charges with McGill, as well as the maximum penalty for each charge. McGill confirmed that he was satisfied with the representation he had received from his attorneys. McGill also confirmed that he understood the terms of his plea as laid out by the court. Finally, the court confirmed once more that McGill understood that he would serve whatever prison term, between 10 and 17 years, that the court imposed, and McGill stated that he understood this. The trial court accepted McGill's guilty plea, finding that it was knowingly, intelligently, and voluntarily entered after he was fully advised of his constitutional rights.

{¶ 16} McGill maintains that his plea was invalid because he did not understand the effect of his plea on his eligibility for judicial release and because he was not advised of his right to testify at trial. We disagree. The trial court is not obligated to go beyond the requirements of Crim.R. 11 prior to accepting a guilty plea. *State v. Hudson*, 8th Dist. Cuyahoga No. 105177, 2017-Ohio-7406, ¶ 13, citing

*State v. Williams*, 7th Dist. Mahoning No. 11MA131, 2012-Ohio-6277, ¶ 39. A guilty plea is not rendered invalid because the defendant was not informed of a right or waiver not enumerated in Crim.R. 11. *State v. Railing*, 8th Dist. Cuyahoga No. 67137, 1994 Ohio App. LEXIS 4703, 2 (Oct. 20, 1994). The trial court's thorough explanation of McGill's rights was sufficient for strict compliance with Crim.R. 11. The court used the language in Crim.R. 11 in informing McGill that he was waiving his right not to testify at trial, thus satisfying the rule's requirements. Although explicitly informing a defendant that they have the choice to testify at trial or not would undoubtedly provide them with a more complete understanding of their constitutional rights, such an explanation goes beyond the requirements of Crim.R. 11. The absence of this explanation, therefore, does not invalidate McGill's knowing, intelligent, and voluntary guilty plea.

{¶ 17} Similarly, Crim.R. 11 generally does not require courts to inform a defendant of his eligibility for judicial release. Where this eligibility is incorporated into a plea agreement, however, a defendant's guilty plea may be invalidated if he or she is given misinformation regarding judicial release. *State v. Williams*, 8th Dist. Cuyahoga Nos. 104078 and 104849, 2017-Ohio-2650, ¶ 15, citing *State v. Ealom*, 8th Dist. Cuyahoga No. 91455, 2009-Ohio-1365, citing *State v. Bush*, 3d Dist. Union No. 14-2000-44, 2002-Ohio-6146.

{¶ 18} McGill does not argue that the trial court misinformed him regarding his ineligibility for judicial release. Further, a review of the record shows that the court informed McGill repeatedly that he would be ineligible for judicial release.

McGill argues that the last thing he said on the record regarding judicial release is that he did not understand it. A review of the plea hearing transcript in its entirety shows that, although there was some confusion in the discussion of judicial release, the court repeatedly confirmed that McGill understood the terms of his plea agreement. In particular, prior to accepting his plea, the court confirmed with McGill that he understood that whatever his sentence was, between 10 and 17 years, he would serve the amount of time that the court imposed. McGill confirmed that he understood this. Therefore, it appears that McGill had an understanding of the effect of his guilty plea.

{¶ 19} Because the trial court fully complied with Crim.R. 11 and McGill entered his guilty plea knowingly, intelligently, and voluntarily, we overrule his assignments of error.

{¶ 20} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

---

RAYMOND C. HEADEN, JUDGE

PATRICIA ANN BLACKMON, P.J., and
ANITA LASTER MAYS, J., CONCUR