[Cite as *State v. Williams*, 2020-Ohio-4467.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellee,              :

                                 No. 109091

    v.                                :

JAVON WILLIAMS,                          :

    Defendant-Appellant.             :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 17, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-634340-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Carl J. Mazzone, Assistant Prosecuting Attorney, *for appellee.*

Joseph V. Pagano, *for appellant.*

EILEEN A. GALLAGHER, J.:

{¶ 1} Defendant-appellant Javon Williams appeals his convictions after he pled guilty to one count of aggravated robbery with a three-year firearm specification and one count of felonious assault. Williams contends that his guilty

pleas were "unknowing" and "involuntary" because he was not properly advised regarding judicial release and that the trial court erred in entering a nunc pro tunc entry indicating that he was not eligible for judicial release. Williams also contends that his sentences are contrary to law because the trial court failed to make all of the findings necessary for the imposition of consecutive sentences and that the record does not support the individual and consecutive sentences imposed by the trial court. For the reasons that follow, we affirm.

**Procedural History and Factual Background**

{¶ 2} On November 13, 2018, a Cuyahoga County Grand Jury indicted Williams on four counts: one count of attempted murder in violation of R.C. 2923.02 and 2903.02(A); one count of aggravated robbery in violation of R.C. 2911.01(A)(1); one count of aggravated robbery in violation of R.C. 2911.01(A)(3) and one count of felonious assault in violation of R.C. 2903.11(A)(1). Each of the counts included one-year and three-year firearm specifications.

{¶ 3} The charges arose out of an incident that occurred on or about November 3, 2018 in which Williams and a codefendant, Shamar Smiley, robbed and shot a Case Western Reserve University student when he returned to his fraternity house on Murray Hill Road in Cleveland after grocery shopping. Smiley pulled out a gun and the two men ordered the victim to give them his cell phone, keys and wallet. As the victim reached into the car to retrieve the items, Smiley shot the victim in the stomach. The bullet lodged in the victim's lower back. When

Smiley shot the victim, a shell casing was ejected; it was later recovered by police at the scene.

{¶ 4} Williams and Smiley ran off. Witnesses called 911, providing a description of the assailants. Responding officers observed Williams and Smiley in the area and pursued them. They apprehended Williams in a nearby parking lot. While he was being booked into the county jail, bullets fell out of Williams' pocket that matched the shell casing recovered at the scene. Williams claimed that he was on drugs at the time of the incident and did not recall what had happened, except that he knew he did not shoot anyone.

{¶ 5} Williams initially pled not guilty to all charges. The state thereafter extended two plea offers. Under the first plea offer, Williams would plead guilty to an amended Count 2, aggravated robbery in violation of R.C. 2911.01(A)(1) with a three-year firearm specification, for which he would receive an agreed sentence in the range of eight to 14 years. Under the second plea offer, Williams would plead guilty to an amended Count 2, aggravated robbery in violation of R.C. 2911.01(A)(1) with a three-year firearm specification, and an amended Count 4, felonious assault in violation of R.C. 2903.11(A)(1) with no firearm specifications. The parties would "recommend to the [c]ourt a [sentencing] range of six years up to 16 years." As an additional term of the plea agreement, Williams would not be eligible for judicial release. In exchange for his guilty plea(s), the remaining counts and specifications would be nolled.

{¶ 6} On August 13, 2019, the trial court held a change-of-plea hearing. After the state and defense counsel set forth the terms of the two plea offers on the record and addressed Williams' questions regarding the plea offers, Williams told the trial court that he wanted to take the second plea offer. The trial court then proceeded with the plea colloquy.

{¶ 7} In response to the trial court's preliminary questions, Williams stated that he was 20 years old and a United States citizen, that he was able to read and write, that he had been in the twelfth grade and was "about to finish" high school when the incident occurred, that he had had a job at a gas station at the time of the incident and that he was not under the influence of any drugs or alcohol. The trial judge told Williams that if there was anything he did not understand, "stop me, and with the help of [defense counsel], I'll make sure you understand everything." Williams agreed.

{¶ 8} The trial court advised Williams of his constitutional rights and confirmed that he understood the rights he would be waiving by entering his guilty pleas. The trial court then identified each of the counts to which Williams would be pleading guilty, explained each count and identified the potential prison sentences and fines he would face on each count by pleading guilty. Williams pled guilty to each of the charges in accordance with the plea agreement.

{¶ 9} Williams indicated that he was satisfied with the representation he had received from his counsel, that no promises or threats had been made beyond what had been stated on the record to induce him to enter his guilty pleas and that

the guilty pleas had been entered "voluntarily" of his own "free will." The trial court found that Williams understood the nature of the charges against him and his constitutional rights and that his guilty pleas were "knowing, intelligent, [and] voluntary." Both defense counsel and the state indicated that they were satisfied that the trial court had complied with Crim.R. 11. The trial court accepted Williams' guilty pleas, found him guilty of the offenses to which he had pled guilty and dismissed the remaining counts and specifications with which Williams had been charged. The trial court then asked the state to identify the factual basis for the guilty pleas.

{¶ 10} The trial court referred Williams to the probation department for a presentence investigation and report ("PSI") and the sentencing hearing was scheduled for the following month.

{¶ 11} Williams was sentenced on September 9, 2019.[1] At the outset of the sentencing hearing, the trial court addressed Williams and stated that, based on the plea agreement, "there was * * * an understanding there is a minimum of six years and a maximum of * * * 16 years * * * on your plea with the State as a recommendation to this Court." After reviewing the PSI, reviewing the letters submitted on Williams' behalf and hearing from the victim, the victim's parents, the state, defense counsel, Williams' pastor, friends and family and Williams himself, the trial court sentenced Williams to an aggregate sentence of 13 years. On amended

---

[1] Smiley was also sentenced at the September 9, 2019 sentencing hearing.

Count 2, the trial court sentenced Williams to three years on the firearm specification to be served prior to and consecutively to seven years on the underlying the aggravated robbery charge. On amended Count 4, the felonious assault charge, the trial court sentenced Williams to three years, to be served consecutively to the sentence imposed on Count 2. The trial court also imposed five years of mandatory postrelease control. The trial court waived fines and costs.

{¶ 12} Prior to sentencing Williams, the trial court identified the principles and purposes of sentencing that it considered in determining an appropriate sentence:

> So when I have to issue a sentence * * * I must comply with the purposes and principles of sentencing under 2929.11(A).
>
> To punish * * * you, protect the public from future crimes by you and others using the minimum sanctions the Court determines accomplishes the purpose without imposing an unnecessary burden on state or local government resources.
>
> I always have to consider the need for incapacitation, deterrence, rehabilitation and restitution. The sentence I impose should be commensurate and not demean the seriousness of your conduct, its impact on the victims, and consistent with sentences for similar crimes by similar offenders.

{¶ 13} The trial court spoke at length regarding the "scope of the destruction," "psychological harm" and fear Williams and Smiley had caused to the victim and the "diverse * * * learning community" of Case Western Reserve University. Although noting that Williams did not pull the trigger, the trial court found Williams to be "just as culpable and complicit" as Smiley. The trial court explained:

You both decided to use a gun to rob and nearly kill an innocent person. For what? For what? A couple dollars? Is that the value you both put on another person's life? * * * You came close to killing someone. It's only a matter of luck that you didn't.

Both of your actions, both of your actions, rippled through this community as people hesitate to go about their daily lives and activities with a sense of safety. The only way to restore some peace of mind to this affected community is if they know you will both not be able to prey upon them again.

{¶ 14} Although observing that it had no obligation to do so, given that the sentencing range had been "agreed upon," the trial court made the following findings at the sentencing hearing supporting the trial court's imposition of consecutive sentences:

[T]his Court finds that a consecutive sentence is necessary to protect the public. That it's not disproportionate. I find that the harm to the individual was so great that, and unusual, that a single prison term does not adequately reflect the seriousness of your conduct.

I believe that the scope of this conduct is necessary for this sentence. * * *

Mr. Smiley, Mr. Williams, the fact and the fear on what you did in that community and what you did to the victim, the victim's family and the police officers is huge. * * * [R]ight now what you've done and what caused the harm to this community, is so great that I think these sentences are appropriate, and I don't believe that it demeans the seriousness of the conduct.

{¶ 15} After sentencing Williams, the trial court inquired whether there was "anything else" that needed to be done. The assistant prosecuting attorney stated: "I would just like to remind the defendants and the Court that part and parcel of the plea agreement there will be no judicial release." The trial court responded: "Understood."

{¶ 16} In its September 9, 2019 sentencing journal entry, the trial court set forth the sentences imposed at the sentencing hearing and stated: "The court considered all required factors of the law. The court finds that prison is consistent with the purpose of R.C. 2929.11."

{¶ 17} On September 10, 2019, the trial court issued a nunc pro tunc entry to include the findings it had made in support of the imposition of consecutive sentences in its sentencing journal entry. On September 16, 2019, the trial court issued a second nunc pro tunc entry, adding information regarding Williams' ineligibility for judicial release: "Nunc pro tunc entry as and for 09/09/2019, Deft's sentencing entry should reflect that deft is not eligible for any judicial release."

{¶ 18} Williams appealed, raising the following two assignments of error for review:

> Assignment of Error I: Appellant's sentence is contrary to law because the record does not support the individual sentences or the imposition of consecutive sentences.

> Assignment of Error II: Appellant's plea is invalid because he was not properly advised of judicial release and the nunc pro tunc entry indicating that appellant is not eligible for judicial release is void.

**Law and Analysis**

{¶ 19} For ease of discussion, we address Williams' second assignment of error first. In his second assignment of error, Williams contends that his guilty pleas were "unknowing" and "involuntary" and should be vacated because he was not informed, prior to the entry of his guilty pleas, "what his eligibility for judicial release would be if he did not enter the plea" or "what he was waiving" with respect to

judicial release by entering into the plea agreement. Williams also contends that the trial court erred in issuing its September 16, 2019 nunc pro tunc entry that stated that Williams was not eligible for judicial release.

**Knowing, Intelligent and Voluntary Guilty Pleas**

{¶ 20} "Due process requires that a defendant's plea be made knowingly, intelligently, and voluntarily; otherwise, the defendant's plea is invalid." *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 10, citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 25; *see also State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996) ("When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.").

{¶ 21} Crim.R. 11(C) prescribes the process a trial court must follow before accepting a guilty plea to a felony. *Bishop* at ¶ 11, citing *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 8. Under Crim.R. 11(C)(2), a trial court shall not accept a guilty plea in a felony case without personally addressing the defendant and doing all of the following:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 22} The purpose of Crim.R. 11(C) is "'to convey to the defendant certain information so that he [or she] can make a voluntary and intelligent decision whether to plead guilty.'" *State v. Woodall*, 8th Dist. Cuyahoga No. 102823, 2016-Ohio-294, ¶ 12, quoting *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981).

{¶ 23} As a general matter, "a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)," i.e., that "'the plea would [not] have otherwise been made.'" *State v. Dangler*, Slip Opinion No. 2020-Ohio-2765, ¶ 16, 16, quoting *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). There are, however, two exceptions to this rule: (1) when the trial court fails to explain the constitutional rights that a defendant waives by pleading guilty and (2) when the trial court "complete[ly]" fails to comply with a requirement of Crim.R. 11(C). *Dangler* at ¶ 14-15. If the trial court completely fails to comply with a requirement of Crim.R. 11(C)(2), the plea must be vacated; a showing of prejudice is not required.

*Dangler* at ¶ 15; *Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, at ¶ 32. Whether a plea was entered knowingly, intelligently and voluntarily in compliance with Crim.R. 11(C)(2) is subject to de novo review, based on the totality of the circumstances. *See, e.g., State v. Baker*, 8th Dist. Cuyahoga No. 108301, 2020-Ohio-107, ¶ 16; *State v. Jackson*, 8th Dist. Cuyahoga No. 99985, 2014-Ohio-706, ¶ 6; *State v. Spock*, 8th Dist. Cuyahoga No. 99950, 2014-Ohio-606, ¶ 7.

{¶ 24} Although a plea may be invalidated if a defendant shows that he or she was given *misinformation* regarding judicial release that prejudicially impacted his or her decision to enter a plea, *see, e.g., State v. Davner,* 2017-Ohio-8862, 100 N.E.3d 1247, ¶ 57 (8th Dist.), *State v. Williams*, 8th Dist. Cuyahoga Nos. 104078 and 104849, 2017-Ohio-2650, ¶ 15, and *State v. Ealom*, 8th Dist. Cuyahoga No. 91455, 2009-Ohio-1365, ¶ 25-28, there is no requirement that judicial release be explained or that a defendant be informed regarding his or her eligibility or ineligibility judicial release to comply with Crim.R. 11(C)(2). "While a trial court must inform a defendant of the 'maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control,' it does not have to tell the defendant that he or she is not eligible for judicial release." *State v. Robinson*, 8th Dist. Cuyahoga Nos. 106676 and 106980, 2018-Ohio-4863, ¶ 24, quoting Crim.R. 11(C)(2)(a); *see also State v. McGill*, 8th Dist. Cuyahoga No. 108469, 2020-Ohio-575, ¶ 17 ("Crim.R. 11 generally does not require courts to inform a defendant of his eligibility for judicial release."). Williams cites no authority supporting his claim that the "failure to advise [him] of what his

eligibility for judicial release would be if he did not enter the plea" or "what he was waiving" by entering into a plea agreement that precluded eligibility for judicial release rendered his guilty pleas "unknowing" and "involuntary."

{¶ 25} Furthermore, the transcript from the change-of-plea hearing clearly and unequivocally shows that Williams was informed, prior to the entry of his guilty pleas, that if he were to accept the plea agreement offered by the state, he would not be eligible for judicial release. The record also reflects that Williams understood this:

> [THE STATE]: Your Honor, there will be no judicial release. Whatever the sentence your Honor gives in that range is the sentence. That's part and parcel of any plea agreement with a recommended sentence.
>
> THE COURT: Do you understand that, Javon?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: What is your desire to do?
>
> * * *
>
> THE DEFENDANT: I'll take the six, your Honor.
>
> THE COURT: You'll take the six to 16?
>
> THE DEFENDANT: Yes, your Honor.

{¶ 26} There is nothing in the record to suggest that Williams was ever misinformed regarding his eligibility or ineligibility for judicial release.

{¶ 27} Upon review of the record, considering the totality of the circumstances, we find that the court complied with Crim.R. 11(C)(2), and that Williams entered his guilty pleas knowingly, intelligently and voluntarily. The

record shows that Williams was informed of and understood the nature of the charges, the maximum penalty involved, the effect of his guilty pleas and the constitutional rights he would waive by pleading guilty.

**Nunc Pro Tunc Entry**

{¶ 28} Williams also contends that the trial court erred in issuing a nunc pro tunc entry stating that Williams was not eligible for judicial release. We disagree. "A trial court may correct clerical errors in its journal entries at any time in order to conform to the transcript of the proceedings." *Beachwood v. Pearl*, 2018-Ohio-1635, 111 N.E.3d 620, ¶ 27 (8th Dist.); *see also* Crim.R. 36 ("Clerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time."). "'Although trial courts generally lack authority to reconsider their own valid final judgments in criminal cases, they retain continuing jurisdiction to correct clerical errors in judgments by a nunc pro tunc entry to reflect what the court actually decided.'" *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718, ¶ 13, quoting *State ex rel. Womack v. Marsh*, 128 Ohio St.3d 303, 2011-Ohio-229, 943 N.E.2d 1010, ¶ 13; *see also State ex rel. DeWine v. Burge*, 128 Ohio St.3d 236, 2011-Ohio-235, 943 N.E.2d 535, ¶ 17 ("'[C]ourts possess inherent authority to correct clerical errors in judgment entries so that the record speaks the truth.'"), quoting *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, ¶ 19. However, proper use of a nunc pro tunc entry is limited to memorializing what the trial court actually did, not what the trial court might have done, should have done

or intended to do. *See, e.g., State v. Hidvegi*, 8th Dist. Cuyahoga Nos. 108229 and 108928, 2019-Ohio-3893, ¶ 20.

{¶ 29} In this case, the trial court entered a nunc pro tunc entry indicating that Williams was not eligible for judicial release. Williams' ineligibility for judicial release was a term of the parties' plea agreement and the trial court expressly acknowledged that Williams was not eligible for judicial release at the sentencing hearing. Having inadvertently omitted Williams' ineligibility for judicial release from its original sentencing journal entry, the trial court properly used a nunc pro tunc entry to remedy that error.

{¶ 30} Accordingly, Williams' second assignment of error is meritless and overruled.

### Williams' Sentences

{¶ 31} In his first assignment of error, Williams challenges his sentences as being "contrary to law." He contends that the trial court failed to properly consider the principles and purposes of sentencing under R.C. 2929.11 and the relevant sentencing factors under R.C. 2929.12 when imposing his individual sentences. He also contends that the trial court erred in imposing consecutive sentences because the trial court failed to make all of the findings necessary for the imposition of consecutive sentences under R.C. 2929.14(C)(4) and because the record clearly and convincingly does not support the imposition of consecutive sentences.

{¶ 32} Our review of Williams' sentences is limited by R.C. 2953.08(D)(1). Pursuant to R.C. 2953.08(D)(1), a sentence imposed upon a defendant is not subject

to appellate review "if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge." *See also State v. Noling*, 136 Ohio St.3d 163, 2013-Ohio-1764, 992 N.E.2d 1095, ¶ 22 (R.C. 2953.08(D)(1) is "a statutory limit on a court of appeals' jurisdiction to hear an appeal."). This limitation on a defendant's ability to challenge a jointly recommended sentence on appeal applies to sentences imposed as a result of plea agreements involving an agreed specific term, plea agreements involving a jointly recommended sentencing range and plea agreements involving pleas to multiple offenses with a jointly recommended aggregate sentencing range. *State v. Williams*, 8th Dist. Cuyahoga No. 108724, 2020-Ohio-3802, ¶ 8-10; *State v. Patterson*, 8th Dist. Cuyahoga No. 106655, 2018-Ohio-4114, ¶ 10; *State v. Grant*, 2018-Ohio-1759, 111 N.E.3d 791, ¶ 11-20, 23 (8th Dist.). "That appellant agreed to a sentencing range or sentencing cap, as opposed to a specific sentence, is immaterial." *Grant* at ¶ 23. The limitation also applies where nonmandatory consecutive sentences are imposed, even where there is no specific agreement as to the imposition of consecutive sentences. *State v. Smith*, 8th Dist. Cuyahoga No. 108708, 2020-Ohio-3454, ¶ 23; *Grant* at ¶ 24; *State v. Glaze*, 8th Dist. Cuyahoga No. 105519, 2018-Ohio-2184, ¶ 15-16.

{¶ 33} Williams disputes that his sentences are not reviewable. He contends that because the plea agreement here involved a sentencing range that was "recommended" to the court by the parties, rather than an "agreed" sentence, R.C. 2953.08(D)(1) does not apply. We disagree. By its terms, R.C. 2953.08(D)(1)

applies to sentences that are "recommended jointly." As detailed above, the record reflects that Williams was sentenced pursuant to a plea agreement that included, as one of its negotiated terms, an aggregate sentencing range that was recommended jointly to the trial court. Defense counsel expressly acknowledged this fact at the sentencing hearing, stating that the terms of the plea agreement included a "range of sentences that we have jointly recommended to this Court."

{¶ 34} The record reflects that Williams was well aware of the "jointly recommended" sentencing range at the time he accepted the state's plea offer and entered his guilty pleas. When initially identifying the two plea offers that had been extended to Williams during the change-of-plea hearing, the state indicated that under the "second option" — the plea offer Williams ultimately selected — the parties "would recommend to the Court a range of six years up to 16 years." When explaining the difference between the two plea offers to Williams, the trial court described "Option B" as involving guilty pleas to "two Counts, Count 2 and Count 4, and leave it up to the Court from six to 16 years." It is clear that Williams understood this when he accepted the state's plea offer:

> THE DEFENDANT: I'll take the six, your Honor.
>
> THE COURT: You'll take the six to 16?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: All right. All right.

{¶ 35} This is not a case, such as *State v. Huffman,* 8th Dist. Cuyahoga No. 2018-Ohio-1192 — upon which Williams relies — where the trial court failed to

impose the parties' jointly recommended sentence. In that case, this court vacated the defendant's sentences after the trial court rejected the parties' joint recommendation of concurrent sentences and imposed consecutive sentences. *Id.* at ¶ 2-9. The court remanded the case for the trial court either to resentence the defendant under the terms of the parties' plea agreement or to allow the defendant to withdraw his guilty pleas. *Id.* at ¶ 1, 22. In this case, the parties' jointly recommended sentence was "imposed by [the] sentencing judge." R.C. 2953.08(D)(1). The trial court sentenced Williams to an aggregate sentence of 13 years, within the jointly recommended sentencing range of "six to 16 years."

{¶ 36} Accordingly, the issue that remains in this case is whether Williams' sentences were "authorized by law." R.C. 2953.08(D)(1). A sentence is "authorized by law" within the meaning of R.C. 2953.08(D)(1) "'if it comports with all mandatory sentencing provisions.'" (Emphasis deleted.) *State v. Sergent*, 148 Ohio St.3d 94, 2016-Ohio-2696, 69 N.E.3d 627, ¶ 26, quoting *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, paragraph two of the syllabus.

{¶ 37} In *Underwood*, the Ohio Supreme Court considered whether a sentence imposed by the trial court was "authorized by law" where the trial court imposed individual sentences on counts the state had previously conceded were allied offenses of similar import. *Underwood* at ¶ 1, 5. The court held that R.C. 2941.25, which requires the trial court to merge allied offenses of similar import prior to sentencing and which codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10,

Article I of the Ohio Constitution against receiving multiple punishments for the same act, was a "mandatory sentencing provision" with which the trial court was required to comply. *Id.* at ¶ 23-26. As such, the defendant's sentence was not "authorized by law" and R.C. 2953.08(D) did not bar appellate review of the defendant's sentence even though it was jointly recommended by the parties and imposed by the trial court. *Id.* at ¶ 26, 30, 33.

{¶ 38} In applying R.C. 2953.08(D)(1), the court distinguished between mandatory sentencing provisions and discretionary sentencing decisions by the trial court. The court noted that its holding

> does not prevent R.C. 2953.08(D)(1) from barring appeals that would otherwise challenge the court's discretion in imposing a sentence, such as whether the trial court complied with statutory provisions like R.C. 2929.11 (the overriding purposes of felony sentencing), 2929.12 (the seriousness and recidivism factors), and/or 2929.13(A) through (D) (the sanctions relevant to the felony degree) or whether consecutive or maximum sentences were appropriate under certain circumstances.

*Id.* at ¶ 22.

{¶ 39} Here, the trial court sentenced Williams to ten years on amended Count 2 (three years on the firearm specification consecutive to seven years on the underlying aggravated robbery charge) and three years on amended Count 4 (the felonious assault charge). The record reflects that when doing so, the trial court considered both the principles and purposes of sentencing under R.C. 2929.11 and the relevant sentencing factors under R.C. 2929.12.

{¶ 40} The trial court ran Williams' individual sentences consecutive to one another, resulting in an aggregate sentence of 13 years. The sentences imposed were

within the authorized statutory ranges for each of the offenses and were within the agreed-upon aggregate range of six to 16 years. Williams' sentences did not fail to include any "mandatory sentencing provisions." As such, they were authorized by law.

{¶ 41} Williams argues his consecutive sentences should be vacated because the trial court failed to make all of the findings required for the imposition of consecutive sentences under R.C. 2929.14(C)(4); however, based on the parties' plea agreement, the trial court was not required to make consecutive sentencing findings in order to impose consecutive sentences in this case. "If a jointly recommended sentence includes nonmandatory consecutive sentences, and the trial judge fails to make the consecutive-sentence findings * * *, the sentence is nevertheless 'authorized by law,' and therefore is not appealable pursuant to R.C. 2953.08(D)(1)." *Sergent*, 148 Ohio St.3d 94, 2016-Ohio-2696, 69 N.E.3d 627, at ¶ 30, 43. When the trial court imposes nonmandatory consecutive sentences within a jointly recommended sentencing range that is authorized by law, the sentences are "not subject to appellate review under R.C. 2953.08(D)(1), regardless of whether there is any specific agreement to nonmandatory consecutive sentences." *Grant*, 2018-Ohio-1759, 111 N.E.3d 791, at ¶ 34; *see also Smith*, 2020-Ohio-3454, at ¶ 23; *Patterson*, 2018-Ohio-4114, at ¶ 10.

{¶ 42} As the court explained in *Grant*:

Range agreements are no different than specific term agreements; they are both negotiated agreements based on a quid pro quo arrangement where each side gives up something in exchange for

being bound by the terms of the agreement. Under either scenario, the defendant can * * * limit his exposure. When an agreed range is involved, the state is ensured the sentence will fall within the agreed range and the defendant is ensured it will not exceed it. We cannot permit a defendant to agree to a term of imprisonment, whether expressed specifically or within a range, in exchange for lesser charges or having some charges dismissed, only to turn around and challenge that very agreement on appeal. Such practice would only serve to undermine the state's incentive to enter plea agreements in the first place.

* * *

Where a defendant agrees to a sentencing range, he implicitly agrees to all definite sentencing possibilities within that range, including nonmandatory consecutive sentences. * * * "If [the defendant] believed a sentence at the top end of that range was improper, [he] should not have accepted a plea deal that authorized it." [*State v.*] *Connors*, 2d Dist. Montgomery No. 26721, 2016-Ohio-3195, at ¶ 4.

* * *

The inherent understanding in some agreed ranges is that they are inclusive of consecutive sentences that may be imposed. If a defendant agrees to a range that allows for the imposition of more than 11 years on any counts involving an F-1 offense and any other crime, that defendant has agreed to consecutive sentences.

*Grant* at ¶ 18, 31, 33; *cf. State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690, ¶ 25 ("The General Assembly intended a jointly agreed-upon sentence to be protected from review precisely because the parties agreed that the sentence is appropriate. Once a defendant stipulates that a particular sentence is justified, the sentencing judge no longer needs to independently justify the sentence.").

{¶ 43} In entering into the plea agreement in this case, the parties agreed that any aggregate sentence within the range of six to 16 years would be appropriate. The maximum sentence the trial court could have imposed on Count 2 was fourteen

years (three years on the firearm specification consecutive to 11 years on the aggravated robbery charge). The maximum sentence the trial court could have imposed on Count 4 was eight years. As such, the agreed range of "six to 16 years" necessarily contemplated the potential imposition of nonmandatory consecutive sentences. Accordingly, Williams implicitly agreed to the imposition of consecutive sentences when he entered into the plea agreement, and the trial court was permitted to impose nonmandatory consecutive sentences within the agreed sentencing range even without making all of the findings that would otherwise be required for the imposition of consecutive sentences under R.C. 2929.14(C)(4). *See, e.g., State v. Phillips*, 3d Dist. Allen No. 1-19-43, 2020-Ohio-2785, ¶ 27 (where defendant's sentence was imposed pursuant to a joint recommendation, appellate court "need not discuss whether the trial court made consecutive-sentence findings to conclude that [defendant's] consecutive sentences are authorized by law").

{¶ 44} Because the sentences imposed by the trial court were within the sentencing range jointly recommended by Williams and the state as part of the plea agreement and were authorized by law, Williams' sentences are not reviewable under R.C. 2953.08(D)(1). Accordingly, we overrule Williams' first assignment of error.

{¶ 45} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

EILEEN T. GALLAGHER, A.J., and
RAYMOND C. HEADEN, J., CONCUR