[Cite as *State v. Smith*, 2024-Ohio-963.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,              :

                      No. 112880

    v.                                       :

KEVIN SMITH, JR.,                       :

    Defendant-Appellant.            :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 14, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-670541-A

---

## *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph Lucchesi, Assistant Prosecuting Attorney, *for appellee*.

Edward M. Heindel, *for appellant*.

KATHLEEN ANN KEOUGH, A.J.:

{¶ 1} Defendant-appellant, Kevin Smith, Jr. ("Smith"), appeals from the trial court's judgment, rendered after a bench trial, finding him guilty of two counts of felonious assault and one count of having weapons while under a disability, and

sentencing him to an aggregate prison sentence of eight to nine years. Finding no merit to the appeal, we affirm.

## I.  Background

{¶ 2}  Smith was indicted in a three-count indictment as follows: Count 1, felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree, with one- and three-year firearm specifications; Count 2, felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony, with one- and three-year firearm specifications; and Count 3, having weapons while under a disability in violation of R.C. 2923.13(A)(2), a felony of the third degree, with a one-year firearm specification. Smith pleaded not guilty, and the case proceeded to trial.

{¶ 3}  Charles Lott ("Lott") testified that he was alone in his apartment in the Woodhill Estates housing complex around 7 p.m. on February 9, 2022. Lott said his apartment is on the first floor of the apartment building; there is an apartment across the hall from his and there are two apartments upstairs.

{¶ 4}  Lott said he answered a knock at the door and let his girlfriend, Katie Mills ("Katie"), and her son, Smith, into his apartment. Both Katie and Smith were intoxicated. Lott said he knew Smith because he had been at his apartment before and once even spent the night there. Lott said that Smith sat down in a chair but after 10 to 15 minutes, he got up, came over to Lott, who was sitting on the couch, pulled his pistol out, and put it up to Lott's head. Lott said he pushed the pistol down but Smith again put it up to Lott's head. Lott said he again pushed the pistol down but Smith again brought it up to Lott's head and told him, "Don't touch my gun."

Lott said that Smith then shot him. Lott said he told Smith, "Oh man, you shot me," and Smith responded, "No man, I wound you." Lott said Smith then shot him again before putting the pistol back in his pocket.

{¶ 5} Lott testified that he ran out of his apartment and upstairs to his neighbor's apartment on the second floor to escape from Smith, but the neighbor was not home and did not answer his knock. Lott said he then heard Katie and Smith run out of the building so he came back downstairs to his apartment and called the police. He then ran across the hall to his neighbor Linda Pruitt's ("Pruitt") apartment. Lott said he was "bleeding and hurting" as he talked to Pruitt and told her to call the police because "Katie's son" had shot him. EMS then arrived on the scene and transported Lott to the hospital, where he had surgery for his wounds. Lott testified that he identified Smith from a photo lineup that detectives showed him while he was at the hospital.

{¶ 6} Pruitt testified that she lived across the hall from Lott and was in her bedroom on February 9, 2022, when she heard two gunshots. As she was looking out her bedroom window, she saw Katie and Smith running away from the apartment building. Pruitt said that she knew both Katie and Smith because Katie used to date her stepfather and Smith had once lived across the street from her sister; Pruitt said she had also met Smith at Lott's apartment. Pruitt identified Smith in court as one of the people she saw running away from the apartment building on February 9, 2022.

**{¶ 7}** Pruitt testified that Lott knocked on her door and when she opened the door, she saw him standing there with bullet wounds in his chest and under his arm. She said that he told her, "Katie's son shot me twice. If I die, tell the police that." The trial court overruled defense counsel's objection to Pruitt's testimony. Pruitt testified that she called EMS and the police, who arrived shortly thereafter. Pruitt said that she spoke with the police at the scene and later gave them a recorded statement.

**{¶ 8}** Cuyahoga Metropolitan Housing Authority ("CMHA") police officer Thomas Vidal-Engaurran testified that he responded to a call of "shots fired" at Lott's apartment on February 9, 2022. Officer Vidal-Engaurran and another CMHA officer secured the scene and took photographs; they also found two spent shell casings and an intact bullet on the floor in Lott's apartment. Officer Vidal-Engaurran said that he saw blood on the door handle and droplets of blood on the floor of the apartment that led to a puddle of blood near the couch.

**{¶ 9}** CMHA police detective William Chapman testified that he administered a six-person photo array to Lott at the hospital and that Lott identified Smith from the array as the shooter. Detective Chapman also recovered a bullet that was removed from Lott's arm during surgery. On cross-examination, Detective Chapman conceded that Lott never gave the police a physical description of the shooter or the gun. He also conceded that the police had not submitted any evidence for DNA or fingerprint testing, but said that the police do not conduct fingerprint and DNA testing when they have a known suspect.

{¶ 10} The trial court found Smith guilty of all counts and specifications. At sentencing, the court found that the felonious assault charges in Counts 1 and 2 merged, and the state elected sentencing on Count 2. The court sentenced Smith to an indefinite sentence of two to three years' incarceration on Count 2, consecutive to the three-year firearm specifications on both Counts 1 and 2. The court sentenced Smith to two years' incarceration on Count 3, having weapons while under a disability, and one year on the firearm specification, to be served concurrently with the other sentences, for an aggregate total prison sentence of eight to nine years. This appeal followed.

## II. Law and Analysis

### A. Hearsay Testimony

{¶ 11} In his first assignment of error, Smith contends that the trial court improperly considered hearsay testimony when it allowed Pruitt to testify that Lott told her, "Katie's son shot me twice. If I die, tell the police that."

{¶ 12} We review a trial court's decision regarding the admissibility of evidence for an abuse of discretion. *State v. Apanovitch*, 33 Ohio St.3d 19, 25, 514 N.E.2d 394 (1987). "'Abuse of discretion' is a term of art, describing a judgment neither comporting with the record, nor reason." *Klayman v. Luck*, 8th Dist. Cuyahoga Nos. 97074 and 97075, 2012-Ohio-3354, ¶ 12, citing *State v. Ferranto*, 112 Ohio St. 667, 676-677, 148 N.E.362 (1925). "'A decision is unreasonable if there is no sound reasoning process that would support that decision.'" *Klayman* at *id.*, quoting *AAAA Ent. Inc. v. River Place Comm. Urban Redevelopment*, 60 Ohio St.3d

157, 161, 553 N.E.2d 597 (1990). An abuse of discretion may also be found where the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.).

{¶ 13} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Such statements are inadmissible unless an exception to the hearsay rule applies. Evid.R. 802. One such exception is an excited utterance, which is defined as "a statement relating to a startling event or condition made while the declarant was under the stress of the excitement caused by the event or condition." Evid.R. 803(2). "The rationale for the admission of these statements is that the shock of the event causes the declarant's reflective process to be halted. Thus, the statement is unlikely to have been fabricated and carries a high degree of trustworthiness." *State v. Butcher*, 170 Ohio App.3d 52, 2007-Ohio-118, 866 N.E.2d 13, ¶ 27 (11th Dist.).

{¶ 14} For a statement to fall within the excited utterance exception, four elements must be satisfied: (1) a startling event; and (2) a statement relating to that event; (3) made by a declarant with firsthand knowledge; (4) while the declarant was under the stress of the excitement caused by the event. *State v. Shutes*, 8th Dist. Cuyahoga No. 105694, 2018-Ohio-2188, ¶ 36, citing *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 123. Smith contends that Lott's statement to Pruitt was not an excited utterance because enough time had passed such that the

statement was the product of reflective thought, rather than the stress of excitement caused by the event.

{¶ 15} A statement may be an excited utterance even if it is not made strictly contemporaneously with the startling event. *State v. Duncan*, 53 Ohio St.2d 215, 219, 373 N.E.2d 1234 (1978). There is no per se length of time after which a statement may no longer be considered to be an excited utterance. *State v. Taylor,* 66 Ohio St.3d 295, 303, 612 N.E.2d 316 (1993). Thus, the passage of time between the event and the statement is relevant but not dispositive. *Id*. "Each case must be decided on its own merits, since it is patently futile to attempt to formulate an inelastic rule delimiting the time limits within which an oral utterance must be made in order that it be termed a spontaneous declaration." *Duncan* at 219-220. "The central requirements are that the statement must be made while the declarant is under the stress of the event, and the statement may not be a result of reflective thought." *Shutes* at ¶ 37, citing *Taylor* at 303.

{¶ 16} There is no question that Lott was still under the stress of the excitement caused by the shooting when he told Pruitt that "Katie's son shot me twice." The statement was made immediately after Lott ran upstairs after the shooting but found his neighbor not at home, then ran back down to his apartment and called the police, and then ran across the hall to Pruitt's apartment. It is obvious that very little time passed between the shooting and Lott's statement to Pruitt; indeed Lott said he was "bleeding and hurting" when he knocked on Pruitt's door and asked her to call the police. That Lott was still under the stress of the event is

also apparent by his instruction to Pruitt that she tell the police that Smith shot him "if I die." It is clear that Lott's statement to Pruitt was made while he was still under the stress of the event, and the statement was not the product of reflective thought. Smith does not challenge any of the other elements of the excited utterance exception and, accordingly, we find that the trial court did not abuse its discretion in admitting Pruitt's testimony that Lott told her "Katie's son shot me twice" as an excited utterance exception to the hearsay rule. The first assignment of error is overruled.

**B. Sufficiency and Manifest Weight of the Evidence**

{¶ 17} In his second assignment of error, Smith contends that his felonious assault convictions were not supported by sufficient evidence. In his third assignment of error, he contends that the felonious assault convictions were against the manifest weight of the evidence.

{¶ 18} A sufficiency challenge requires a court to determine whether the state has met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would sustain a conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*

{¶ 19} In contrast to a sufficiency argument, a manifest-weight challenge questions whether the state met its burden of persuasion. *State v. Armstrong*, 8th Dist. Cuyahoga No. 1097090, 2021-Ohio-1087, ¶ 24. When considering the appellant's claim that a conviction is against the manifest weight of the evidence, the appellate court examines the record, weighs the evidence and all reasonable inferences therefrom, considers the witnesses' credibility and determines whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387. Reversal on manifest-weight grounds is reserved for the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶ 20} Initially, we note that we need not consider Smith's arguments as they relate to Count 1 because of the merger of Count 1 with Count 2. A "conviction" consists of both a guilty verdict and the imposition of a penalty. *State v. Whitfield,* 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 135. Count 1 merged with Count 2 at sentencing and thus, without a penalty, is not a conviction. Therefore, we cannot individually review the evidence supporting the finding of guilt on Count 1. *State v. Worley*, 8th Dist. Cuyahoga No. 103105, 2016-Ohio-2722, ¶ 23.

{¶ 21} Smith was convicted in Count 2 of felonious assault in violation of R.C. 2903.11(A)(2), which states that "[n]o person shall knowingly * * * cause or attempt to cause physical harm to another by means of a deadly weapon." A "deadly weapon" is "any instrument, device, or thing capable of inflicting death, and

designed or specifically adopted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11.

{¶ 22} Smith contends that his felonious assault conviction was not supported by sufficient evidence and was against the manifest weight of the evidence because "there was a lack of identification testimony and complete disregard by the investigating authorities to look for the real assailant." (Appellant's brief, p. 14.) He contends that the police "jumped to the conclusion" that he was the shooter, without any follow-up investigation. He argues that without a description of the shooter's clothing, facial features, or height and weight, as well as no description of the gun, there was no identification evidence tying him to the shooting other than Lott's statement that the shooter was "Katie's son." Smith's argument is without merit.

{¶ 23} Lott testified that he knew both Katie and Smith before the shooting; Katie was his girlfriend and Smith had once spent the night at his apartment. Thus, Lott's identification of Smith as the shooter was credible. Likewise, Pruitt testified that she knew Katie and Smith prior to the shooting and that she saw them running away from the apartment building on February 9, 2022, shortly after she heard two gunshots. Lott also testified that Katie and Smith were the only people in his apartment when he was shot. The evidence was sufficient to identify Smith as the shooter.

{¶ 24} Smith's assertion that the police should have conducted DNA and fingerprint testing on the bullets they found in Lott's apartment or that they needed a physical description of the shooter before they could rely on Lott's identification

of Smith as the shooter and Pruitt's statement that she saw Katie and Smith running away from the apartment building after hearing gunshots is disingenuous. Lott knew that Smith was the shooter, and he picked him out of a photo array. There was no need for further evidence or investigation by the police to find the "real assailant" because he had already been identified.

{¶ 25} Our review of the record demonstrates that the state produced sufficient evidence that Smith knowingly caused harm to Lott by shooting him with a deadly weapon. Likewise, after examining the record, weighing the evidence, and considering the credibility of the witnesses, we do not find that this is the exceptional case where the evidence weighs heavily against the conviction. Smith's conviction for felonious assault in violation of R.C. 2903.11(A)(2) is supported by sufficient evidence and is not against the manifest weight of the evidence. The second and third assignments of error are therefore overruled.

{¶ 26} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

EILEEN T. GALLAGHER, J., and
SEAN C. GALLAGHER, J., CONCUR