[Cite as *State v. Yancy*, 2025-Ohio-5135.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

    v.                                        :

LATOYA J. YANCY,                    :

    Defendant-Appellant.      :

No. 114608

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; VACATED IN PART;
                AND REMANDED; CROSS-APPEAL DISMISSED
**RELEASED AND JOURNALIZED:** November 13, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-691800-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Kevin R. Filiatraut, Assistant Prosecuting
Attorney, *for appellee.*

Law Office of Timothy Farrell Sweeney and Timothy F.
Sweeney, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Appellant Latoya Yancy ("Yancy") challenges her convictions and sentence for charges of complicity to murder.  She raises five assignments of error:

1.  Yancy's convictions on all nine counts of the alleged "complicity" offenses and associated firearm specifications — Counts 2-3 and 7-13

— are not supported by constitutionally sufficient evidence of her guilt of all the required elements necessary to convict. Her convictions violate due process; she must be discharged.

2. Yancy's convictions on all nine counts of the alleged "complicity" offenses and associated firearm specifications — Counts 2-3 and 7-13 — are against the manifest weight of the evidence.

3. Yancy's trial counsel should have preserved the defense of self-defense/defense of another by filing notice under Crim.R. 12.2 and requesting a jury instruction on such defense; trial counsel's failure to do so was prejudicially deficient performance.

4. The trial court erred when it allowed J.R. to testify to the statement purportedly made to her by [D.B.] of the alleged theft of the Blue Hyundai from Loop Drive, when such statement was inadmissible hearsay and its admission violated the Confrontation Clause of the 6th and 14th Amendments, U.S. Constitution, and Article I, Sections 10 and 16, Ohio Constitution.

5. The trial court erred by imposing in the journal entry a three-year sentence on Count 2's firearm specification, when that sentence is unjustified and is contrary to the sentence imposed by the court at the sentencing hearing.

{¶ 2} After a thorough review of the applicable law and facts, we affirm the judgment of the trial court in part and vacate in part. We vacate (1) Yancy's conviction on the five-year firearm specification attendant to the involuntary-manslaughter conviction, (2) the sentence imposed in the sentencing entry for the aggravated-robbery charge in Count 2, and (3) the nunc pro tunc order entered after the sentencing entry. The remainder of Yancy's convictions and sentences are affirmed. We remand this matter for the trial court to sentence Yancy on the three-year firearm specification that was attendant to Count 2, and to issue a new

sentencing entry as set forth below. In addition, we dismiss the State's cross-appeal because it failed to file a merit brief in support.

## I. Factual and Procedural History

{¶ 3} This appeal arises from three separate incidents that occurred on April 14 and April 15, 2023, in Cleveland and Garfield Heights.

{¶ 4} In the late evening hours of April 14, 2023, Yancy was driving a Dodge minivan at West 25th Street and Detroit Avenue, where she ran a red light and struck a Honda CRV driven by T.S. Yancy exited her vehicle and attempted to steal another vehicle that was stopped at the stoplight by trying to pull the driver out of the vehicle. When she was unsuccessful, she spoke to others in the intersection, asking for a ride to leave the scene. Still unsuccessful, she then attempted to take T.S.'s vehicle. T.S. was recording her on his cell phone at this time; he asked her who she was, and she said, "I'm Latoya Yancy . . . I'm the driver." (State's exhibit No. 4.) She then pointed to T.S.'s vehicle and stated that it was hers. Yancy attempted to drive T.S.'s vehicle, but it had been rendered disabled after being struck by Yancy's minivan.

{¶ 5} Yancy finally walked away from the scene and arrived at Loop Drive in Cleveland. She got into a blue Hyundai Tucson that was parked there and drove away. The Hyundai belonged to J.R. and had been driven that night by J.R.'s boyfriend, D.B.

{¶ 6} After discovering the theft of J.R.'s vehicle, D.B. went home and woke J.R. to tell her that her vehicle had been stolen. J.R. used a mobile app that was connected with her vehicle, Bluelink, and she began tracking the location of the

vehicle. She, D.B., and J.R.'s uncle got into her uncle's car to locate the Hyundai. J.R. was driving her uncle's vehicle.

{¶ 7} The GPS records for the Hyundai showed the vehicle on Loop Drive, then traveling on several different roads, including Laumar Avenue. The vehicle traveled on the west side of the city and ultimately parked again on Laumar Avenue. The Hyundai then traveled to Marymount Hospital, which was when J.R., D.B., and J.R.'s uncle encountered it and began following it. J.R. could see from the Bluelink app that the Hyundai was nearly out of gasoline. The Hyundai drove to a gas station, then to a Dollar General.

{¶ 8} The Hyundai was recorded on the gas station's surveillance video, as was J.R.'s uncle's vehicle. The video showed the driver of the Hyundai wearing a yellow tank top, just as Yancy had been wearing in T.S.'s video.

{¶ 9} J.R. drove into the Dollar General parking lot where the Hyundai was stopped. J.R. pulled alongside the Hyundai and then moved to attempt to block the Hyundai from leaving. D.B. got out of the vehicle and walked toward the Hyundai; an occupant of the Hyundai fired one shot out of the vehicle window, hitting D.B., who later died from his injuries. The Hyundai then drove off. Yancy and the shooter left the Hyundai parked in the middle of the street, with the engine still running, approximately one or two minutes away from the Dollar General.

{¶ 10} Police reviewed other surveillance video from that night from areas near where the shooting occurred and locations where the Hyundai had travelled. They also learned that Yancy lived on Laumar Avenue and obtained a search warrant

for her residence. The execution of the search warrant yielded a yellow tank top that matched the tank top worn by the driver of the minivan in T.S.'s video and the driver of the Hyundai in the gas station surveillance video.

{¶ 11} Yancy was arrested and interviewed by police. During the interview, she admitted to driving the minivan that crashed into T.S.'s vehicle, that she was high on drugs at the time of the crash, that she punched someone after the crash and was trying to obtain a ride from someone else, and that she had left the crash scene and walked a few minutes away. She maintained that she had been given permission to use the Hyundai and that the key had been left inside the vehicle.

{¶ 12} In discussing her driving on that evening, Yancy stated that she had thought she was being followed and that the other person in the blue Hyundai with her was "Chris Webb," who has a child with Yancy's sister. Police later learned that "Chris Webb" was not the individual's name but were able to ascertain his actual name.[1] Yancy stated that this person had shot someone who had jumped out at them but that she had no idea that the individual shot was the same person from whom the Hyundai had been stolen.

{¶ 13} Yancy was charged with 16 counts: aggravated murder (Count 1), two counts of aggravated robbery (Counts 2 and 3), grand theft of a motor vehicle (Count 4), unauthorized use of a motor vehicle (Count 5), receiving stolen property (Count

---

[1] Police investigated this individual and charged him with shooting D.B., but the charges were later dismissed pending further investigation. A review of the common pleas court docket reflects that, as of the date of this opinion, this person has not been charged again with shooting D.B. Accordingly, we will only refer to the individual who shot and killed D.B. as "the shooter."

6), two counts of murder (Counts 7 and 10), three counts of robbery (Counts 8, 9, and 14), two counts of felonious assault (Counts 11 and 12), involuntary manslaughter (Count 13), attempted grand theft of a motor vehicle (Count 15), and failure to stop after an accident (Count 16). A number of the charges had accompanying one-, three-, and five-year firearm specifications.

{¶ 14} The matter proceeded to a jury trial. The State's theory of the case was that Yancy acted as the principal offender in the charges relating to the incidents at West 25th Street and Detroit Avenue but that she was complicit in the shooting of D.B. Prior to the commencement of the State's case, the court asked counsel as to whether there were any particular jury instructions they would be seeking. The State noted that it would be asking for aiding and abetting instructions in line with its complicity theory. Defense counsel stated that, depending upon the evidence admitted, they may want to have an instruction on self-defense and defense of others. The court inquired as to whether defense counsel had provided the required notice to the State of such a defense, and defense counsel stated that it had done so within the prescribed time limits and pursuant to the statute. The State did not disagree.

{¶ 15} At trial, the State presented the testimony of ten witnesses and offered over 250 exhibits in support of its case. The State's witnesses included: T.S.; J.R.; the 911 dispatcher who received J.R.'s call after the shooting; the medical examiner; Officer Noelle Ivaskovic who spoke to J.R. after the shooting; Officer Joseph Timko, who located the stolen Tucson; Lt. Robert Jarzambak, who arrived on the scene first

and attempted to save D.B.'s life; and Det. Mark Menary, who was the lead investigator on the case.

{¶ 16} At the close of the State's case, Yancy moved for a judgment of acquittal pursuant to Crim.R. 29, which the court denied. Yancy did not present any witnesses but did offer three exhibits, which were photos of the Hyundai. Yancy renewed her Crim.R. 29 motion, which was again denied.

{¶ 17} The jury found Yancy not guilty of aggravated murder but guilty on all other counts and specifications. At the sentencing hearing, the State acknowledged that certain counts merged and requested a sentence on Count 2, aggravated robbery of D.B.; Count 10, murder of D.B.; Count 14, robbery of John Doe; Count 15, attempted grand theft of a motor vehicle; and Count 16, failure to stop after an accident. The State specifically argued that the aggravated-robbery count did not merge into the murder charge but acknowledged that the other theft and robbery counts did merge.

{¶ 18} At sentencing, the court found that the aggravated-robbery count (Count 2) did merge with the murder count (Count 10), to which the State objected. The court stated that, because of the merger, it would not impose a sentence for the three-year firearm specification attendant to Count 2, to which the State also objected.

{¶ 19} The court ultimately sentenced Yancy to 15 years to life on the murder charge (Count 10), plus eight years on the attendant firearm specifications; three years on the robbery charge (Count 14), to be served concurrently with the murder

sentence; 12 months for the attempted grand theft conviction (Count 15), also served concurrently; and six months in jail for the failure to stop after an accident (Count 16), with credit for time served.

{¶ 20} The sentencing entry reflected all of the above; however, in the entry, the aggravated-robbery count was not merged into the murder count, and Yancy was sentenced to one year on that charge plus three years on the attendant firearm specification. The sentencing entry stated that Yancy's sentence totaled 26 years.

{¶ 21} Yancy then filed the instant appeal. The State filed a notice of cross-appeal.

{¶ 22} The trial court subsequently issued a nunc pro tunc sentencing entry, noting that the sentence was revised as to one count but that the total sentence "remain[ed] otherwise unchanged." With regard to Count 2, the entry removed the additional one-year sentence for aggravated robbery that had been imposed in the sentencing entry (but not at the sentencing hearing); the three-year sentence on the attendant firearm specification that also had not been imposed at the hearing remained.

## II. Law and Analysis

{¶ 23} For ease of discussion, we will address the assignments of error out of order, beginning with the fourth.

## A. Admission of Hearsay

{¶ 24} In her fourth assignment of error, Yancy argues that the trial court erred by admitting hearsay testimony under the excited-utterance exception.

Specifically, Yancy contends that J.R.'s testimony about statements made to her by D.B. regarding the theft of the Hyundai constituted inadmissible hearsay. Yancy asserts that the statements did not constitute an excited utterance because there was no testimony that D.B.'s emotions were related to the theft nor was there any assertion of when the statement was made, in particular how long after the theft had occurred.

{¶ 25} During the State's direct examination of J.R., she was asked about being awakened by D.B. on the night of April 14, 2023. The following exchange occurred:

Q. When [D.B.] woke you up, what was his demeanor?

A. He was like frantic and mad.

Q. Frantic and mad. Before — what about his actions made you think he was frantic and mad?

A. He came in the house nervous and, like, looking through stuff and I said, "What's the matter?"

Q. Okay. And what about his actions made — here, let me ask it this way. At that point, how long had you been dating him?

A. Four years.

Q. Had you ever seen him like this before?

A. No.

Q. No. Was this an unusual thing for him to be acting like this, frantic, nervous way?

A. No — I mean, yes.

Q. And?

THE COURT: You're saying it was unusual?

THE WITNESS: Yes.

THE COURT: Thank you.

Q. Okay. What did he say to you?

[DEFENSE COUNSEL]: Objection.

THE COURT: Would the State like to respond?

[COUNSEL FOR THE STATE]: Excited utterance, Judge.

THE COURT: I'll allow it. The objection is overruled.
You may answer, ma'am.

THE WITNESS: He was just so frantic I said, "What's going on?" Because he wasn't talking at first and he said, "Somebody stole your car." And I said, "Who?" He said, "I don't know."

(Tr. 601-602.)

{¶ 26} With regard to the excited-utterance exception, the Supreme Court of Ohio has laid out four factors for a trial court to consider in evaluating the admissibility of such a statement:

(a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant

had an opportunity to observe personally the matters asserted in his statement or declaration.

*State v. Taylor*, 66 Ohio St.3d 295, 300-301 (1993), quoting *Potter v. Baker*, 162 Ohio St. 488, 501 (1955). The hearsay exception for an excited utterance "'derives its guaranty of trustworthiness from the fact that [the] declarant is under such state of emotional shock that his reflective processes have been stilled.'" *Id.* at 300, quoting McCormick, *Evidence*, § 297 (2d Ed. 1972).

{¶ 27} In order to qualify as an excited utterance, courts in Ohio have required evidence demonstrating that the statement was a reactive, excited statement made by the speaker, while still under the stress of the event. *See Taylor* at 303 (holding that "[m]erely being 'upset'" did not meet the standard for admissibility under Evid.R. 803(2)); *State v. Norman*, 2019-Ohio-2225 (8th Dist.) (testimony that the declarant sounded "a little nervous, edgy" and that her voice sounded "different than normal" was insufficient for statements to qualify as excited utterances under Evid.R. 803(2)); *State v. Dengg*, 2009-Ohio-4101 (11th Dist.) (finding that testimony that a victim was "crying" and "visibly upset" was not sufficient to constitute an excited utterance because she went to the police station to fill out a report after other people had told her to); *accord State v. Ford,* 2018-Ohio-2128, ¶ 33 (8th Dist.) (finding excited utterance where declarant had been in a car accident and testimony described her as "in shock, shaken, disoriented, crying, speaking in a different language initially, and then finally answering questions in English")*; State v. Collins,* 2013-Ohio-5579, ¶ 14 (8th Dist.) (statement constituted

excited utterance where speaker reported that he had just been robbed, was said to be "frantic," and appeared "afraid").

{¶ 28} It was the State's obligation, as the party seeking admission of the statement under Evid.R. 803(2), to lay the proper foundation. *State v. Jones,* 2023-Ohio-380 (8th Dist.), citing *State v. Hill*, 1981 Ohio App. LEXIS 14266, *4 (12th Dist. Mar. 1, 1981) ("The burden of proving facts which must be established to make evidence admissible is upon the party seeking to introduce the evidence."); *State v. Stover*, 2014-Ohio-2572, ¶ 12 (9th Dist.) (noting that the State sought to admit a statement under the excited-utterance exception to the hearsay rules and therefore had the burden to prove that the statement was made while the declarant was still under the stress of the event).

{¶ 29} We find that the State did meet its burden with regard to the statements by D.B. There had been a startling occurrence when D.B. discovered the theft of J.R.'s vehicle. J.R. testified that he woke her up to tell her and that he sounded "frantic" and "mad." There was no evidence that D.B.'s statements were the product of "reflective thought." *See State v. Smith*, 2024-Ohio-963, ¶ 16 (8th Dist.). Consequently, D.B.'s statements to J.R. regarding the theft of her vehicle constituted excited utterances and were properly admitted by the trial court.

{¶ 30} Yancy's fourth assignment of error is overruled.

### B. Sufficiency of the Evidence

{¶ 31} In her first assignment of error, Yancy contends that her convictions for the complicity offenses were not supported by sufficient evidence. Specifically,

Yancy argues that that State failed to present proof of the essential elements of murder, involuntary manslaughter, robbery, aggravated robbery, felonious assault of D.B., and all of the accompanying firearm specifications.

{¶ 32} "'[A]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed,' would convince the average mind of defendant's guilt beyond a reasonable doubt." *State v. McQuisition*, 2024-Ohio-3011, ¶ 25 (8th Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991). "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.*, quoting *id.* at paragraph two of the syllabus, citing *Jackson v. Virginia*, 443 U.S. 307 (1979). "'In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law.'" *Id.*, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶ 33} Ohio's complicity statute, R.C. 2923.03, provides as follows:

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

. . .

(2) Aid or abet another in committing the offense;

. . .

(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if

he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.

{¶ 34} "To support a conviction based upon complicity by 'aiding and abetting' another, 'the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal.'" *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. As this court has stated:

> "In order to constitute aiding and abetting, the accused must have taken some role in causing the commission of the offense. *State v. Sims*, 10 Ohio App.3d 56, 10 Ohio B. 65, 460 N.E.2d 672 ([8th Dist.]1983). 'The mere presence of an accused at the scene of the crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor.'" *State v. Widner*, 69 Ohio St.2d 267, 269, 431 N.E.2d 1025 (1982). . . ."

*State v. Howard*, 2012-Ohio-3459, ¶ 23 (8th Dist.), quoting *State v. Langford*, 2004-Ohio-3733, ¶ 20 (8th Dist.).

{¶ 35} Aiding and abetting may be shown by direct or circumstantial evidence, and a defendant's participation and criminal intent may be inferred from the defendant's presence, companionship, and conduct before *and after* the offense is committed. (Emphasis added.) *Id.*, citing *id.* at ¶ 21, citing *State v. Cartellone*, 3 Ohio App.3d 145, 150 (8th Dist. 1981), citing *State v. Pruett*, 28 Ohio App.2d 29, 34 (4th Dist. 1971). A defendant may aid or abet another by his words, deeds, gestures, or actions. *State v. Capp*, 2016-Ohio-295, ¶ 25 (8th Dist.).

{¶ 36} Viewing the evidence in a light most favorable to the State, we find that any rational trier of fact could have found the essential elements of murder,

involuntary manslaughter, robbery, aggravated robbery, felonious assault, along with the attendant firearm specifications, proven beyond a reasonable doubt.

{¶ 37} First, with regard to the murder count, Yancy argues that there was no evidence presented to show that she knew the shooter had a firearm and that, therefore, there was no evidence establishing the "knowingly" element required for a murder conviction. Yancy relies on *State v. Shabazz,* 2014-Ohio-1828 (8th Dist.), in support of her argument; however, *Shabazz* is distinguishable. In *Shabazz*, the defendant got into a fight on the dance floor of a bar. Another man fighting was shot by a person with whom Shabazz had come to the bar. In finding that Shabazz was not aware that the shooter possessed a gun, the panel noted that the men were seen on security video being patted down prior to entering the establishment, and there was no evidence as to what the men said or did prior to coming to the club that would indicate the shooter had a weapon. *Id.* at ¶ 31, 39.

{¶ 38} There is certainly a difference between driving a vehicle away after an occupant of the vehicle fired a gun at someone and being present at the same club and engaged in a fight when a companion fired a gun. Yancy drove away from the shooting, and she and the shooter left the Hyundai after the vehicle had nearly run out of gas. Ohio courts have held that driving away with the full knowledge that a firearm had been discharged by another occupant in the vehicle constitutes aiding and abetting. *See State v. Garner*, 2008-Ohio-944, ¶ 21 (10th Dist.) ("The mere act of driving away from the scene of a shooting perpetrated by a passenger of a vehicle has been held to be sufficient to uphold a conviction based on complicity where the

circumstances show the driver knew shots were being fired by the passenger."); *see also State v. Widner*, 69 Ohio St.2d 267, 269 (1982) (complicity to commit attempted murder conviction upheld where passenger fired gun and driver continued to drive away).

{¶ 39} Moreover, Yancy never abandoned the criminal activity after the shooting — she did not report the crimes to police and lied about how she had obtained the car and the name of the individual who was with her. Thus, the requisite criminal intent can be inferred from Yancy's actions after the shooting. There was sufficient evidence for the jury to determine that Yancy was complicit in D.B.'s murder.

{¶ 40} Yancy next argues that there was insufficient evidence to convict her of robbery and aggravated robbery relating to the Hyundai. Yancy contends that there was no proof that she was complicit with the shooter in taking the Hyundai from D.B. In particular, she asserts that there was not sufficient evidence that the shooter participated in taking or exerting control over it or that he had any knowledge of anything that occurred that night prior to the time he entered the vehicle. The State maintains that it did not argue at trial that Yancy was complicit in the robbery charges and instead presented its case that Yancy was the principal offender with regard to the theft offenses.

{¶ 41} This court has held that "[i]n Ohio, there is no difference between those convicted of complicity in a crime or as a principal offender." *State v. Crosby*, 2018-Ohio-3793, ¶ 9 (8th Dist.). *See also State v. Walton*, 2007-Ohio-5070 (8th

Dist.) (finding no error with the State's decision to pursue alternate theories of defendant being the principal offender or an aider and abettor in his murder trial). The jury is not required to decide whether a defendant was the principal offender or an aider and abettor. *See State v. Horton*, 2014-Ohio-2785, ¶ 13.

{¶ 42} Yancy was charged in the indictment with the principal offenses and could therefore be convicted of the same without demonstrating that the shooter was involved in stealing the Hyundai. The jury was instructed that it could not find Yancy guilty without first determining that the State had proven, beyond a reasonable doubt, all of the elements of aggravated robbery and robbery. Since the State was not required to show that the shooter also participated in these crimes, Yancy's argument is without merit.

{¶ 43} Yancy also contends that there was insufficient evidence to convict her of the involuntary-manslaughter charge, which was premised on the grand theft and receiving stolen property charges relating to the Hyundai. Again, Yancy contends that there was no proof that the shooter had knowingly committed these crimes; however, at trial, the State again was arguing that Yancy was the principal offender in the charges for grand theft and receiving stolen property and consequently the involuntary-manslaughter charge. Accordingly, Yancy's argument has no merit.

{¶ 44} Finally, Yancy asserts that there was insufficient evidence to convict her of the attendant firearm specifications for the same reasons as above, which we determined to be without merit. In addition, "[i]t is well settled that an unarmed accomplice can be convicted of an underlying felony, together with a firearm

specification, based on an aider and abettor status." *Howard*, 2012-Ohio-3459, ¶ 24, quoting *State v. Porch*, 1994 Ohio App. LEXIS 1936, *11 (8th Dist. May 5, 1994), citing *State v. Chapman*, 21 Ohio St.3d 41 (1986). "In such a case, the actions of the principal are imputed to the accomplice, and the accomplice may be found to have committed every element of the offense committed by the principal, including possession of the weapon." *State v. Humphries*, 2014-Ohio-1230, ¶ 18 (8th Dist.), citing *State v. Frost*, 2005-Ohio-5510 (2d Dist.), and *State v. Alexander*, 2013-Ohio-2533 (8th Dist.).

{¶ 45} Nevertheless, Yancy further contends, and the State concedes, that the five-year firearm specification was inapplicable to the involuntary-manslaughter charge. R.C. 2941.146 provides for a mandatory five-year prison term for offenders who commit "a felony that includes, as an essential element, purposely or knowingly causing or attempting to cause the death of or physical harm to another and that was committed by discharging a firearm from a motor vehicle . . . ." The culpable mental state for involuntary manslaughter, as defined by R.C. 2903.04, is supplied by the predicate offense — in this case, grand theft and/or receiving stolen property. *See State v. Gresham*, 2011-Ohio-2519, ¶ 16 (8th Dist.). Therefore, the five-year drive-by specification was not applicable to this offense. Accordingly, we conclude that this assignment of error is well taken solely as to the five-year firearm specification attached to the involuntary-manslaughter charge. Yancy's conviction for the five-year firearm specification attendant to the involuntary-manslaughter count is vacated.

{¶ 46} With regard to all of the other counts and specifications, we find that there was sufficient evidence presented to show that Yancy acted in complicity with the shooter or as the principal offender. Yancy's first assignment of error is sustained in part and overruled in part.

### C. Manifest Weight of the Evidence

{¶ 47} In her second assignment of error, Yancy argues that her convictions for complicity were against the manifest weight of the evidence for the same reasons outlined in her sufficiency argument. Her additional arguments are that J.R. was not credible because she lied about whether D.B. had a weapon and that she was "only picking up a key when she bent down over [D.B] . . . after he was shot and immediately before she left the scene." Yancy further contends that the detectives misrepresented the law of complicity during Yancy's interview, which the jury viewed, and the prosecutor made "frivolous arguments" that this case involved a "drive-by shooting" and that Yancy was the complicit driver.

{¶ 48} When reviewing a manifest weight challenge, an appellate court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Virostek*, 2022-Ohio-1397, ¶ 54 (8th Dist.), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A reversal on the basis that a verdict is against the manifest weight of the evidence is granted "'only in the exceptional case in which the evidence weighs

heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Martin* at 175.

{¶ 49} We find no merit to Yancy's assertion that J.R. was not credible. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the finder of fact." *State v. Metz*, 2019-Ohio-4054, ¶ 70 (8th Dist.), citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The trier of fact may "'believe or disbelieve any witness or accept part of what a witness says and reject the rest.'" *Metz* at *id.*, quoting *State v. Antill*, 176 Ohio St. 61, 67 (1964). At trial, the finder of fact is in the "best position to view the witnesses and observe their demeanor, gestures, and voice inflections that are critical observations in determining the credibility of a witness and his or her testimony." *State v. Sheline*, 2019-Ohio-528, ¶ 100 (8th Dist.), citing *State v. Clark*, 2010-Ohio-4354, ¶ 17 (8th Dist.), citing *State v. Hill*, 75 Ohio St.3d 195, 205 (1996), and *Antill* at 66.

{¶ 50} While Yancy argues that J.R. lied about whether D.B. had a weapon and what she picked up when she bent down over D.B., there was no other evidence that D.B. had possessed a weapon when he was shot.

{¶ 51} With regard to Yancy's argument that the jury heard detectives misstate the law of complicity during her interview, this argument is more properly asserted regarding the exclusion or admission of evidence by the trial court. This argument does not relate to the manifest weight of the evidence and has no bearing on this assignment of error. Nevertheless, the jury was later instructed by the trial court as to the law of complicity. Yancy does not argue that the trial court gave

improper instructions on complicity, and it is presumed that the jury followed the trial court's instructions. *See State v. Johnson*, 2011-Ohio-3469, ¶ 16 (8th Dist.), citing *State v. Jones*, 90 Ohio St.3d 403 (2000). Accordingly, we find no merit to this argument.

{¶ 52} Finally, Yancy's argument that the prosecutor made "frivolous arguments" also does not relate to the manifest weight of the evidence. Such an assertion would generally be raised as prosecutorial misconduct.

{¶ 53} We cannot conclude that this is the exceptional case in which the jury lost its way and created a manifest miscarriage of justice. Yancy's second assignment of error is overruled.

### D. Ineffective Assistance of Counsel

{¶ 54} In her third assignment of error, Yancy asserts that her trial counsel was ineffective because they failed to preserve the defense of self-defense by not filing the required notice under Crim.R. 12.2 and failed to request a jury instruction on self-defense.

{¶ 55} To prevail on an ineffective-assistance-of-counsel claim, an appellant must show their defense counsel's performance was deficient and that they were prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). Defense counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness. *Id*. at 688. In order to show prejudice, an appellant must establish that, but for their trial counsel's errors, there is a reasonable probability that the result of the trial would have been different. *Id*. at

694. A reviewing court "need not address both prongs of *Strickland* if an appellant fails to prove either prong." *State v. Carter*, 2017-Ohio-8847, ¶ 27 (9th Dist.). In applying the *Strickland* test, courts must always recall that properly licensed counsel is presumed competent and that trial counsel must be afforded deference regarding trial strategy. *In re Roque*, 2006-Ohio-7007, ¶ 11 (11th Dist.).

{¶ 56} As noted earlier, the court inquired of defense counsel whether he had filed the proper notice to raise self-defense. He stated that he had, and the State agreed. In its brief, the State acknowledges that the notice had been filed in a prior, dismissed case but maintains that it was still properly presented. Accordingly, it does not appear that any failure to file the required notice was an impediment to raising self-defense, and we cannot find Yancy's trial counsel ineffective on this basis.

{¶ 57} Moreover, it does not appear that a self-defense assertion would have been viable. "A defendant is entitled to a self-defense jury instruction when [s]he presents legally sufficient evidence for every element of a self-defense claim." *State v. Palmer*, 2024-Ohio-539, ¶ 1. In Ohio, a person may use deadly force in self-defense when he or she: (1) "'was not at fault in creating the situation giving rise to the affray'"; (2) "'had a bona fide belief that he or she was in imminent danger of death or great bodily harm and that his [or her] only means of escape from such danger was in the use of such force'"; and (3) "'did not violate any duty to retreat or avoid the danger.'" (Brackets added in *Messenger*.) *State v. Wilson*, 2024-Ohio-

776, ¶ 20, quoting *State v. Messenger*, 2022-Ohio-4562, ¶ 14, quoting *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002).

{¶ 58} Yancy's trial counsel argued that she was not complicit and that there was no evidence that she aided or abetted the shooter or that she was aware that the shooter even possessed a firearm. "The decision about which defense or theory to pursue at trial is a matter of trial strategy 'within the exclusive province of defense counsel to make after consultation with his [or her] client.'" *State v. Perrien*, 2020-Ohio-798, ¶ 107 (8th Dist.), quoting *State v. Murphy*, 91 Ohio St.3d 516, 524 (2001).

{¶ 59} In the instant matter, the record reflects that defense counsel made the strategic, tactical decision to argue that Yancy was not complicit and had no idea the shooter had a weapon, rather than asserting self-defense. Given the other evidence implicating Yancy in the crimes leading up to the shooting, this was a viable trial strategy. A defendant is not denied the constitutional right to effective assistance of counsel if counsel makes the strategic decision to not pursue every possible trial strategy. *State v. Brown*, 38 Ohio St.3d 305, 319 (1988). Absent a showing that counsel failed to research the facts or the law, or that counsel disregarded a crucial defense, this court defers to counsel's judgment. *State v. Clayton*, 62 Ohio St.2d 45, 49 (1980), citing *People v. Miller*, 7 Cal.3d 562, 573-574 (1972).

{¶ 60} After reviewing the record, we decline to second-guess trial counsel's strategical and tactical decision to pursue the theory that Yancy was not complicit in

the shooting rather than a self-defense theory. Yancy's ineffective-assistance claim fails, and her third assignment of error is overruled.

### E. Sentencing

{¶ 61} In her fifth assignment of error, Yancy argues that the trial court erred by entering a judgment that sentenced her to three years on the firearm specification attached to the aggravated-robbery charge when the court had agreed that this count had merged with the other counts involving D.B. and the Hyundai and therefore did not sentence her to the firearm specification at the hearing.

{¶ 62} In responding to this assigned error, the State first asserts that the court erred in merging the aggravated-robbery charge with the murder charge. However, while the State filed a notice of cross-appeal, it did not file a combined answer brief and brief in support of its cross-appeal. The State therefore has not assigned any errors for us to rule upon, and we will disregard its arguments regarding the claimed-merger error, and we dismiss the cross-appeal under App.R. 18(C).

{¶ 63} At the sentencing hearing, the court determined that the aggravated-robbery count (Count 2) merged into the murder count (Count 10) and therefore, it did not impose a sentence on the aggravated-robbery charge. In its sentencing entry, though, the court did not state that these counts merged and incorrectly noted that the State had elected to proceed on Counts 2 and 10. The entry imposed a one-year sentence on the aggravated-robbery count, along with three years on the attendant firearm specification.

{¶ 64} The court later erroneously attempted to remove the imposition of the aggravated-robbery sentence through a nunc pro tunc judgment entry. Proper use of a nunc pro tunc entry is limited to correcting a clerical error in a judgment or order so that the record reflects what the court actually did or decided. *See State v. Lester*, 2011-Ohio-5204, ¶ 18, citing *State ex rel. Fogle v. Steiner*, 74 Ohio St.3d 158, 163-164 (1995); *State v. Chislton*, 2021-Ohio-697, ¶ 21 (8th Dist.); *State v. Wright*, 2019-Ohio-1361, ¶ 18 (8th Dist.). A nunc pro tunc entry cannot be used to supply omitted action or to indicate what the court might or should have done or intended to do. *See, e.g., State v. Williams*, 2020-Ohio-4467, ¶ 28 (8th Dist.); *State v. Abner*, 2002-Ohio-6504, ¶ 22 (8th Dist.); *see also Chislton* at ¶ 18 ("A nunc pro tunc entry may be used only to reflect what actually happened. A nunc pro tunc entry may not be used to 'change, modify, or correct erroneous judgments.'"), quoting *Wright* at ¶ 18.

{¶ 65} Thus, while a nunc pro tunc entry can be used to correct a sentencing entry to reflect the sentence the trial court actually imposed upon a defendant at a sentencing hearing, it cannot be used to resentence a defendant or to impose a sanction that the court did not impose as part of the sentence at the sentencing hearing. *State v. Green*, 2022-Ohio-3922, ¶ 7-8 (8th Dist.), citing *State v. Aarons*, 2021-Ohio-3671, ¶ 26 (8th Dist.). "'When a court exceeds its power in entering a nunc pro tunc order, the resulting nunc pro tunc order is invalid.'" *State v. Walter*, 2017-Ohio-466, ¶ 5 (8th Dist.), quoting *State v. Senz*, 2002-Ohio-6464, ¶ 12 (9th Dist.), citing *National Life Ins. Co. v. Kohn*, 133 Ohio St. 111, 113-114 (1937). Here,

the nunc pro tunc entry did, indeed, reflect what Yancy *should have been* sentenced to, i.e., three years on the firearm specification attendant to Count 2 and no sentence on the base charge, but it did not reflect the sentence that had actually been imposed at the hearing and was therefore invalid.

{¶ 66} Moreover, even if the nunc pro tunc order had not improperly attempted to correct the sentence imposed, it was entered by the trial court *after* Yancy's notice of appeal had been filed. A trial court has authority "to correct 'clerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission . . . at any time.'" *State v. Johnson*, 2024-Ohio-1371, ¶ 7 (8th Dist.), quoting Crim.R. 36. However, "'once an appeal is perfected, the trial court is divested of jurisdiction over matters that are inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment.'" *Aarons* at ¶ 20, quoting *State ex rel. Electronic Classroom of Tomorrow v. Cuyahoga Cty. Court of Common Pleas,* 2011-Ohio-626, ¶ 13, quoting *State ex rel. Rock v. School Emps. Retirement Bd.*, 2002-Ohio-3957, ¶ 8. "[G]enerally, the timely filing of a notice of appeal precludes a trial court from issuing further orders affecting matters at issue in the appeal. Where a trial court enters an order without jurisdiction, its order is void and a nullity." *Id.*, citing *State v. Williamson*, 2014-Ohio-3909, ¶ 18 (8th Dist.), citing *State v. Abboud*, 2006-Ohio-6587, ¶ 13 (8th Dist.).

{¶ 67} In the instant matter, the trial court's nunc pro tunc order, filed after Yancy's notice of appeal, directly related to and affected matters assigned as error in

this appeal, namely, the sentence imposed. Therefore, the trial court's December 11, 2024 nunc pro tunc sentencing entry was inconsistent with this court's jurisdiction to reverse, modify, or affirm the trial court's judgment and is therefore void. *See id.* at ¶ 24. The nunc pro tunc entry must be vacated, and the only entry before us is the sentencing entry of November 5, 2024.

{¶ 68} Returning to Yancy's argument regarding the firearm specification sentencing, R.C. 2929.14(B)(1)(g) provides:

> If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

{¶ 69} Thus, under the statute, a prison term imposed for a firearm specification under R.C. 2941.145(A) is mandatory, and under R.C. 2929.14(C)(1)(a), mandatory prison terms imposed for firearm specifications are to be served consecutively. In the instant matter, Yancy was convicted of firearm specifications attendant to, inter alia, the murder and aggravated-robbery counts (Counts 10 and 2). Accordingly, under R.C. 2929.14(B)(1)(g), the court was required to impose a prison term for both of the firearm specifications attendant to these counts.

{¶ 70} The fact that the court merged the aggravated-robbery count with the murder count does not change this outcome. The Supreme Court of Ohio has addressed this very issue, holding that the plain language of R.C. 2929.14(B)(1)(g), requiring that certain offenders receive prison terms for multiple specifications, mandates the imposition of separate prison terms for multiple firearm specifications, even where the underlying criminal offenses have been merged. *State v. Bollar*, 2022-Ohio-4370, ¶ 1.

{¶ 71} Accordingly, despite the court's merger of the aggravated-robbery count with the murder count, Yancy was still convicted of aggravated robbery and was therefore statutorily required to be sentenced on the attendant firearm specification.[2] It is well-settled that "[a] sentence that fails to impose a mandatory provision is contrary to law." *State v. Dowdell*, 2022-Ohio-2956, ¶ 8 (8th Dist.), citing *State v. Underwood*, 2010-Ohio-1, ¶ 21. Further, even though the State did not file a brief raising this error, "a sentence imposed contrary to law constitutes plain error and we may review it for plain error." *Id*. at ¶ 9, citing *State v. Whittenburg*, 2022-Ohio-803, ¶ 6 (8th Dist.), citing *State v. Walters*, 2016-Ohio-5783, ¶ 2 (4th Dist.). Once Yancy was found guilty of the firearm specification attached to the aggravated-robbery count, the trial court's failure to impose a prison term for the attendant firearm specification at the sentencing hearing was plain error.

---

[2] We take no position as to whether the trial court's merger of the aggravated-robbery count into the murder count was proper. As noted above, the State did not raise its own assignment of error related to this issue, and thus, we will not review it.

{¶ 72} The sentencing entry reflects a three-year prison sentence on the aggravated-robbery firearm specification, along with a one-year sentence on the base charge, neither of which were imposed at the sentencing hearing. A trial court cannot impose a sentence in the sentencing entry that differs from what it imposed at the sentencing hearing. *State v. Vaughn*, 2016-Ohio-3320, ¶ 18 (8th Dist.). Under Crim.R. 43, a criminal defendant has the right to be present at every stage of the criminal proceedings, including the imposition of sentence and any modification of a sentence. Crim.R. 43(A)(1). Thus, "'"[b]ecause the defendant's presence is required when the court imposes sentence, the trial court errs when its judgment entry of sentence differs from the sentence that it announced at the sentencing hearing in the defendant's presence."'" *Vaughn* at ¶ 18, quoting *State v. Patrick*, 2013-Ohio-3821, ¶ 10 (4th Dist.), quoting *State v. Kovach*, 2009-Ohio-2892, ¶ 28 (7th Dist.), citing *State v. Jordan*, 2006-Ohio-5208, ¶ 48 (10th Dist.).

{¶ 73} Accordingly, Yancy's fifth assignment of error is sustained. We vacate the sentence relating to Count 2 in the sentencing entry, along with the subsequent nunc pro tunc entry. This matter will be remanded for the imposition of sentence on the three-year firearm specification attendant to Count 2.

{¶ 74} Per our resolution of the first assignment of error, we vacate Yancy's conviction on the five-year firearm specification attendant to the involuntary-manslaughter conviction. The remainder of Yancy's convictions and sentences imposed are affirmed.

{¶ 75} We remand this matter to the trial court for the extremely limited purpose of holding a sentencing hearing solely to impose the three-year prison term on the firearm specification attendant to the aggravated-robbery charge in Count 2. Following the hearing, the trial court is instructed to issue a new sentencing entry that reflects (1) the imposition of the three-year prison term for the firearm specification in Count 2, and (2) the vacation of Yancy's conviction for the five-year firearm specification on the involuntary-manslaughter conviction. All of Yancy's other convictions and sentences should remain the same. Counts 2 and 10 are still merged, and no sentence shall be imposed for the base charge in Count 2.

{¶ 76} Judgment affirmed in part, vacated in part, and remanded. The State's cross-appeal is dismissed.

It is ordered that appellee and appellant share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

EILEEN T. GALLAGHER, JUDGE

LISA B. FORBES, P.J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)