[Cite as *State v. Ward*, 2026-Ohio-838.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO, :

    Plaintiff-Appellee, :

                      No. 115328

    v. :

DAVION WARD, :

    Defendant-Appellant. :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 12, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-691136-A

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Adrienne E. Linnick, Assistant Prosecuting Attorney, *for appellee*.

Tyresha Brown-O'Neal, *for appellant*.

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant Davion Ward ("Ward") appeals his convictions and claims the following errors:

1. The conviction is not supported by sufficient evidence.

2. The conviction is against the manifest weight of the evidence.

3. Appellant was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

4. Cumulative error deprived defendant of a fair trial.

{¶ 2} We find that Ward's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. We also find that Ward was not prejudiced by either ineffective assistance of counsel or cumulative error. We, therefore, affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} Ward was charged with two counts of murder and other related charges in connection with the shooting death of Christian Collier ("Collier") on April 1, 2024. Ward pleaded not guilty, and the case proceeded to a jury trial.

{¶ 4} Officer Eric Sands ("Officer Sands") of the Warrensville Heights Police Department testified at trial that on the evening of April 1, 2024, police received a notification from ShotSpotter, a gunshot detection system, that several gunshots were fired near a particular home on Longbrook Road in Warrensville Heights (the "Longbrook residence"). Officer Sands approached the area and found a body lying in the street in a pool of blood. He could see that the individual, later identified as Collier, had been shot in the head. Officer Sands and other officers secured the scene and looked for eyewitnesses.

{¶ 5} Detective Robert Stetka ("Detective Stetka") of the Warrensville Heights Police Department investigated Collier's death. He testified that when he responded to the crime scene, he learned that Ward was the prime suspect. (Tr. 533-

534.) He also learned that there had been an altercation at the Longbrook residence earlier that day and that three females who lived at the house had been assaulted. One of the females, L.W., was injured during the altercation, and she was taken by ambulance to South Pointe Hospital on Warrensville Center Road. The other two females were the daughters of T.L., the owner of the Longbrook residence.

{¶ 6} As a result of the altercation, T.L. called her son, Ward, to come to the house to protect them because a man from the group that assaulted her daughters had brandished a gun and threatened to return. (Tr. 412 and 428.) Shortly thereafter, T.L. and her cousin, J.M., drove to the hospital to check on L.W.

{¶ 7} J.M. testified that on the day of the murder, he was on his way to a gun range with his AR-15 rifle when he received a call from one of his nieces to go to the Longbrook residence because there had been a man at the house who threatened them with a gun. (Tr. 383, 418, and 428.) When he arrived at the house, he placed the AR-15 behind a TV stand with the butt of the gun sticking out. He also called for an Uber to take Ward to the Longbrook residence to be with their family members while he, J.M., was at the hospital. The Uber was scheduled to get Ward at approximately 7:26 p.m., and Ward confirmed via text message to J.M. that he was in the Uber at 7:43 p.m. J.M. testified that when he left the house to go to the hospital, the AR-15 behind the TV stand was not loaded.

{¶ 8} T.L. testified that while she and J.M. were visiting L.W. at the hospital, Collier, who had dated L.W. on and off, came to visit her. (Tr. 311 and 430-431.) L.W. also dated Ward. (Tr. 431.) T.L.'s daughter, K.M., testified that Collier had

cheated on L.W. and that L.W. believed Collier had given her a sexually transmitted disease. (Tr. 451.) According to T.L., L.W. indicated that she did not want Collier there at the hospital, and they asked him to leave. (Tr. 413-414.) Collier left the hospital and went to the Longbrook residence.

{¶ 9} Montega Roberson ("Roberson"), a family friend, was sitting in a car on the driveway at the Longbrook residence smoking marijuana with T.M., her little sister "Marie," and Roberson's younger brother. (Tr. 321.) While they were sitting in the car, Collier arrived and parked his car on the street in front of the Longbrook residence. T.M. got out of Roberson's car and told Collier, "You have to go. You're not allowed here." (Tr. 431.) Collier refused to leave, and Ward exited the house holding a gun. (Tr. 436-437.)

{¶ 10} T.M., K.M., and their aunt, C.M., tried to push Ward back toward the house while also telling Collier to leave. (Tr. 336-437.) T.M. explained that Ward "pushed us out of the way" and "that's when the shots got fired." (Tr. 438.) Seeking clarification, the prosecutor asked, "We're talking about Davion right after he pushed past you. And that's when you see Davion shoot Chris?" T.M. replied, "Yes." (Tr. 438.) T.M. told her sister to call the police, and her sister called the police after calling her mother to report the shooting. (Tr. 439.)

{¶ 11} J.M. testified he believed it was approximately ten to twenty minutes after Collier left South Pointe Hospital that he received a phone call from one of his nieces, who was screaming. T.L. also received a call from her daughter, K.M., who was crying. Thereafter, J.M. returned to the Longbrook residence where he met with

police. L.W. checked herself out of the hospital and returned to the Longbrook residence with T.L.

{¶ 12} J.M. testified that when he arrived at the Longbrook residence, he saw Collier's body lying in the street and checked to see if his AR-15 was still behind the TV stand, but it was gone. (Tr. 390.) He realized that someone had taken his gun and used it to shoot Collier. (Tr. 391 and 397.) As a result, he told police that he was taking responsibility for Ward. (Tr. 397-398.) T.L. told police that Ward had been on his way to the house when she and J.M. went to the hospital and that his phone was still on the scene. (Tr. 418.)

{¶ 13} During the investigation, police went to the house across the street from the Longbrook residence. The owner of the home, James Fleming ("Fleming"), told police that a few bullets entered his home, and police found multiple bullet holes in his walls. (Tr. 364-365.) One of the bullets hit a wall one and a half inches from where Fleming had been sitting. (Tr. 372.)

{¶ 14} Police recovered six 7.62 x 39 mm cartridge cases at the scene. Sara Dranuski ("Dranuski"), a firearms expert with the Cuyahoga County Regional Forensic Science Laboratory, testified that the cartridge cases recovered from the scene are the kind of cartridge typically associated with a rifle. The rifle itself was never recovered.

{¶ 15} Detective Stetka testified that the ShotSpotter notification system detected seven gunshots from 8:12:29 p.m. to 8:12:32 p.m. in the vicinity of the Longbrook residence. (Tr. 543.) Detective Stetka explained that ShotSpotter

guarantees accuracy of an 82-foot radius from where the gunshots are fired and that the actual accuracy is "closer to 10 to 30 feet." (Tr. 543.)

{¶ 16} Detective Stetka also obtained a search warrant to search Collier's car "[t]o see if there were any sort of weapons that would have caused this reaction from Davion Ward." (Tr. 544.) Detective Stetka testified that he found no weapons in Collier's car when he searched it. (Tr. 545.) There were also no weapons found on Collier's person at the scene. (Tr. 483 and 545.)

{¶ 17} Dr. Alison Krywanczyk ("Dr. Krywanczyk"), a deputy medical examiner at the Cuyahoga County Medical Examiner's Officer, performed the autopsy on Collier's body. She testified that Collier sustained two fatal gunshot wounds to the back of the head as well as several superficial "shrapnel-related" injuries. (Tr. 515, 519, and 525-526.) According to Dr. Krywanczyk, Collier was healthy at the time of the shooting and his death was caused by the two gunshot wounds to the head, neither of which was survivable. (Tr. 526 and 528.)

{¶ 18} The jury found Ward guilty of two counts of murder in violation of R.C. 2903.02(A) and 2903.02(B); two count of felonious assault in violation of R.C. 2903.11(A)(1) and 2903.11(A)(2); one count of discharge of a firearm on or near a prohibited premises in violation of R.C. 2923.162; and one count of improperly discharging a firearm at or into a habitation or a school safety zone in violation of R.C. 2923.161(A)(1). The jury also found Ward guilty of the one- and three-year firearm specifications attendant to the murder and felonious-assault charges. The

court sentenced Ward to life in prison with eligibility for parole after 20 years. Ward now appeals his convictions.

## II. Law and Analysis

## A. Sufficiency and Manifest Weight

{¶ 19} In the first and second assignments of error, Ward argues his convictions are not supported by sufficient evidence and that his convictions are against the manifest weight of the evidence.

{¶ 20} Although the terms "sufficiency" and "weight" of the evidence are "quantitatively and qualitatively different," we address these issues together because they are closely related, while applying the distinct standards of review. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶ 21} The test for sufficiency is whether the prosecution met its burden of production at trial. *State v. Bowden*, 2009-Ohio-3598, ¶ 12 (8th Dist.). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 22} In contrast to sufficiency, "weight of the evidence involves the inclination of the greater amount of credible evidence." *Thompkins* at 387. While "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law . . . weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 2007-Ohio-2202, ¶ 25,

citing *Thompkins* at 386-387. "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" *Id.*

{¶ 23} In a manifest-weight-of-the-evidence challenge, the reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 24} Ward was convicted of murder in violation of R.C. 2903.02(A) and (B). R.C. 2903.02 provides, in relevant part:

> (A) No person shall purposely cause the death of another or the unlawful termination of another's pregnancy.

> (B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.

{¶ 25} Ward was also convicted of felonious assault in violation of R.C. 2903.11(A)(1) and (A)(2). R.C. 2903.11 provides, in relevant part:

> (A) No person shall knowingly do either of the following:

> > (1) Cause serious physical harm to another or to another's unborn;

> > (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

{¶ 26} Ward argues the evidence was insufficient and was against the manifest weight of the evidence because the evidence showed that Ward acted in self-defense. To claim a self-defense claim, the defendant must establish

> (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he [or she] was in imminent danger of death or great bodily harm and that his [or her] only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.

*State v. Messenger*, 2022-Ohio-4562, ¶ 15, quoting *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002).

{¶ 27} The second element of a self-defense claim is a combined subjective-and-objective test. *State v. Thomas*, 77 Ohio St.3d 323, 330 (1997). The test first requires evidence establishing that the accused had reasonable grounds to believe or an honest belief that he or she was in imminent or immediate danger of death or great bodily harm. *Id.*

> [T]he jury first must consider the defendant's situation objectively, that is, whether, considering all of the defendant's particular characteristics, knowledge, or lack of knowledge, circumstances, history, and conditions at the time of the attack [he or] she *reasonably believed* [he or] she was in imminent danger.

(Emphasis sic.) *Id.* If this objective standard is met, the jury must then subjectively determine if the defendant had an honest belief, even if mistaken, that he or she was in imminent danger of death or serious injury. *Id.* at 331.

{¶ 28} Ward's 14-year-old sister, K.M., testified that, at the time of the shooting, Collier "was going in his pocket like he had something." (Tr. 458.) However, no other witnesses testified that Collier reached into his pocket or that he

otherwise appeared to be a threat to anyone. As previously stated, no weapons were found either on Collier's person or in his vehicle. Therefore, there was insufficient evidence to support a claim of self-defense, and self-defense was not presented as a defense at trial.

{¶ 29} To the contrary, T.M. testified that Ward pushed her, her sister, and her aunt out of the way in order to approach Collier and shoot him. (Tr. 438.) T.M. testified that she observed Ward shoot Collier, who was unarmed. Therefore, there was sufficient evidence establishing that Ward knowingly caused serious physical harm to Collier (R.C. 2903.11(A)(1)) and that he caused Collier serious physical harm by means of a deadly weapon (R.C. 2903.11(A)(2)), namely a rifle. The same evidence also established that Ward purposely caused Collier's death (R.C. 2903.02(A)) and that he caused the death as a proximate result of committing felonious assault, an offense of violence. Therefore, there was sufficient evidence to support Ward's murder and felonious-assault convictions. And because there was virtually no evidence to contradict T.M.'s eyewitness testimony, we see no reason to doubt the veracity of her testimony. We, therefore, conclude that Ward's murder and felonious-assault convictions are not against the manifest weight of the evidence.

{¶ 30} Ward was also convicted of improper discharge of a firearm on or near a prohibited premises in violation of R.C. 2923.162(A)(3) and improper discharge of a firearm at or into a habitation or school in violation of R.C. 2923.161(A)(1). R.C. 2923.162(A)(3) provides that "[n]o person shall . . . [d]ischarge a firearm upon

or over a public road or highway." R.C. 2923.161(A)(1) provides that "[n]o person, without privilege to do so, shall . . . [d]ischarge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual. . . ."

{¶ 31} The undisputed evidence showed that Ward fired seven gunshots at Collier, who was standing in the street. Some of those gunshots traveled across the roadway and entered Fleming's home. Fleming testified that he was present in the house when the bullets penetrated his house and that they almost struck him. Police also observed bullet holes in the walls of Fleming's house. Therefore, there was sufficient evidence to support these convictions and Ward's convictions are not against the manifest weight of the evidence.

{¶ 32} The first and second assignments of error are overruled.

## B. Ineffective Assistance of Counsel

{¶ 33} In the third assignment of error, Ward argues his trial counsel was ineffective because they (1) failed to assert a claim of self-defense, (2) asserted that police have blanket immunity during voir dire, (3) objected to the removal of a juror for cause after the juror stated that he was having trouble sleeping and concentrating, (4) failed to object to the prosecutor's leading questions on direct examination, and (5) failed to rehabilitate T.M.'s testimony on cross-examination.

{¶ 34} To establish ineffective assistance of counsel, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonable representation and that he or she was prejudiced by that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). Defense

counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness. *Id.* at 688. To establish prejudice, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

{¶ 35} A reviewing court "'need not address both prongs of *Strickland* if an appellant fails to prove either prong.'" *State v. Yancy*, 2025-Ohio-5135, ¶ 55 (8th Dist.), quoting *State v. Carter*, 2017-Ohio-8847, ¶ 27 (9th Dist.). In applying the *Strickland* test, courts are always mindful that a properly licensed attorney is presumed competent and that trial counsel must be afforded deference regarding trial strategy. *Id.*, citing *In re Roque*, 2006-Ohio-7007, ¶ 11 (11th Dist.).

### 1. Self-Defense

{¶ 36} Ward first argues that his trial counsel was deficient because they failed to assert a claim of self-defense. However, "[t]he failure to do a futile act cannot be the basis for a claim of ineffective assistance of counsel, nor could such a failure be prejudicial." *State v. Knox*, 2013-Ohio-1662, ¶ 20 (8th Dist.), citing *State v. Ford*, 2007-Ohio-5722, ¶ 9 (8th Dist.); *see also State v. Davis*, 2021-Ohio-4015, ¶ 26 (8th Dist.) ("Failure to assert an unviable defense does not constitute ineffective assistance.").

{¶ 37} As previously explained, there was little to no evidence that could justify a claim of self-defense. Only one witness, K.M., suggested that the victim "was going in his pocket like he had something." (Tr. 458.) She did not say that Collier had a weapon, only that it looked like he had "something." Although she also

stated that Collier was "[b]eing aggressive," objective evidence shows that he remained in the street. Indeed, the other eyewitnesses testified that Collier remained by his vehicle in the street. (Tr. 338-340, 435-438, and 359.) There is no evidence that he approached the house aggressively. There is no evidence that he had a weapon or that he threatened anyone with a weapon. Moreover, Collier was shot in the back of the head, which further suggests he was not threatening anyone. Therefore, even if Ward's trial counsel had asserted self-defense, it would not have changed the outcome of the trial because any request for self-defense instruction would have been denied.

## 2. Claim of Blanket Immunity

{¶ 38} Ward argues his trial counsel was ineffective because they asserted during voir dire that "police officers have a blanket immunity." (Appellant's brief at p. 14.) Ward cites page 245 of the trial transcript in support of this argument. However, after reviewing the transcript, including page 245, we find no references to "blanket immunity." Rather, defense counsel sought to remove juror No. 2 for cause because he was a paramedic and a member of the Medina County Sheriff's Office's SWAT team. In seeking to have the juror removed for cause, defense counsel asserted that employees of law enforcement agencies are automatically excluded from serving on a jury. He offered no legal authority to support his position, and the trial court denied the request. (Tr. 248.)

{¶ 39} Ward does not explain how or why counsel's attempt to have juror No. 2 automatically disqualified amounted to ineffective assistance of counsel.

Nevertheless, juror No. 2 indicated upon further questioning that he could "absolutely" be fair and impartial and there is nothing in the record to indicate that he was prejudiced against Ward. Therefore, Ward cannot demonstrate that his right to the effective assistance of counsel was violated when his trial counsel sought to remove juror No. 2.

### 3. Sleepy Juror

{¶ 40} Ward argues his trial counsel's performance was deficient because they objected to the removal of juror No. 12 for cause after he stated that he was having trouble sleeping and concentrating. (Tr. 243.) However, Ward fails to explain, much less demonstrate, how the removal of a juror who could not concentrate prejudiced his defense. He, therefore, cannot establish that his trial counsel was deficient for objecting to the juror's removal or that he was prejudiced by the removal of the juror.

### 4. Leading Questions

{¶ 41} Ward suggests his trial counsel was ineffective because they failed to object to the prosecutor's leading questions on direct examination. (Appellant's brief p. 13.) However, he fails to cite any examples in the transcript of counsel's failure to object as required by App.R. 16(A)(7). He also fails to provide any legal authorities in support of his argument as required by App.R. 16(A)(7).

{¶ 42} The appellant bears the burden of demonstrating error on appeal. *Taylor-Stephens v. Rite Aid of Ohio*, 2018-Ohio-4714, ¶ 121 (8th Dist.). Appellate courts are not advocates. *Id.* Therefore, appellate courts "'cannot and will not

search the record in order to make arguments on appellant['s] behalf.'" *Id.*, quoting *Helman v. EPL Prolong, Inc.*, 139 Ohio App.3d 231, 240 (7th Dist. 2000).

{¶ 43} Ward's brief fails to cite to any portions of the record that he believes support his argument and it contains no legal authority to support his claim that he was prejudiced by counsel's failure to object to leading questions as required by App.R. 16(A)(7). Therefore, pursuant to App.R. 12 and 16, we disregard this particular argument.

### 5. T.M.'s Testimony

{¶ 44} Finally, Ward argues his trial counsel was ineffective because they made no attempt to redeem T.M.'s testimony after she alluded to a prior conflict between Ward and Collier. He refers us to page 436 of the transcript wherein T.M. testified that "there was some anger between" Collier and Ward. He contends that his trial counsel should have asked additional questions about the conflict between Collier and Ward. However, defense counsel may have chosen not to inquire about the conflict because it might have established a motive for Ward to kill Collier. We cannot say that counsel's failure to ask T.M. to elaborate on the dispute between the shooter and the victim constituted deficient performance under these circumstances, and we certainly cannot say that Ward was prejudiced by the failure to develop this line of inquiry.

{¶ 45} Therefore, because Ward cannot establish a claim for ineffective assistance of counsel, we overrule the third assignment of error.

## C. Cumulative Error

{¶ 46} In the fourth assignment of error, Ward argues that cumulative error deprived him of his right to a fair trial. He contends that "if the errors complained of in the first three assignments of error, standing alone, do not call for reversal of his conviction, cumulatively, they deprived him of a fair trial." (Appellant's brief p. 14.)

{¶ 47} Under the cumulative-error doctrine, a conviction may be reversed when the cumulative effect of nonprejudicial errors "deprives a defendant of a fair trial even though each of the instances of trial-court error does not individually constitute cause for reversal." *State v. Garrett*, 2022-Ohio-4218, ¶ 270, citing *State v. Powell*, 2012-Ohio-2577, ¶ 223. "However, the doctrine of cumulative error is inapplicable when the alleged errors are found to be harmless or nonexistent." *State v. Allen*, 2016-Ohio-102, ¶ 53 (8th Dist.), citing *State v. Brown*, 2003-Ohio-5059, ¶ 48.

{¶ 48} We overruled the first three assignments of error because we found no errors. Therefore, the doctrine of cumulative error is inapplicable, and the fourth assignment of error is overruled.

{¶ 49} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's

conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

LISA B. FORBES, P.J., and
ANITA LASTER MAYS, J., CONCUR